**Edward G. KRAIMER, Jr., Gerald J. Morrell, Grand Daddy's, LLC and Kraimer Properties, LLC, Plaintiffs,**

v.

**CITY OF SCHOFIELD, Defendant.**

No. 03–C–0473–C.

United States District Court, W.D. Wisconsin.

Oct. 28, 2004.

Jeff Scott Olson, The Jeff Scott Olson Law Firm, S.C., Madison, WI, for Plaintiffs.

Michael J. Roman, Zalewski, Klinner & Kramer, LLP, Wausau, WI, for Defendant.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil suit in which plaintiffs Edward G. Kraimer, Jr., Gerald J. Morrell, Grand Daddy's, LLC and Kraimer Properties, LLC are suing defendant City of Schofield for the allegedly unconstitutional denial of plaintiffs' requests to present adult oriented entertainment at their chosen site. Plaintiffs are seeking injunctive and declaratory relief, as well as money damages for the loss of their freedom of expression and for lost profits. They challenge defendant's zoning code scheme as a violation of their First Amendment rights and in particular, its requirements for obtaining a "conditional use permit" for businesses operating "indoor theaters" within a given zoning district, Ord. § 10.10, and its newly added regulations for adult entertainment enterprises, Ord. § 10.15(6); the now repealed ordinance requiring plaintiffs to obtain a Public Entertainment/Exhibition License (in addition to a conditional use permit) before operating an indoor theater, Ord. § 11.20; and defendant's ordinance prohibiting liquor sales in places offering adult entertainment, Ord. § 16.03.

Defendant contends that all of the challenged ordinances still in place are constitutional because they are nothing more than "locational" zoning regulations that designate locations within the city where certain uses of property may occur. Defendant denies that these provisions are prohibited prior restraints on protected activities. Citing *Blue Canary v. City of Milwaukee,* 270 F.3d 1156 (7th Cir.2001), it argues that the constitutionality of its zoning decisions is shown by cases that " 'allow municipalities to zone strip joints, adult book stores, and like erotic sites out of residential and the classier commercial areas of the city or town.' " *Id.* at 1158 (quoting *Blue Canary v. City of Milwaukee,* 251 F.3d 1121, 1124 (7th Cir.2001)). Defendant does not defend the repealed Public Entertainment/Exhibition Licensing Ordinance but contends that the repeal makes it unnecessary for the court to consider the ordinance's constitutionality.

I conclude that defendant's requirement of a conditional use permit for indoor theaters in the C–1 zoning district is unconstitutional on its face. The requirement is a prior restraint because it allows public officials to deny the use of a forum in advance of any actual expression. As presently drafted, it is not a valid prior restraint because it does not set either narrow and objective standards or specific, reasonable time limits for the permit's issuance.

As to the repealed § 11.20, I conclude that plaintiff's challenge is not moot insofar as it relates to their claim for damages and that § 11.20 was unconstitutional both because it is overbroad and because it is an invalid prior restraint. As to defendant's Ord. § 16.03, I conclude that it too is unconstitutionally overbroad and is not subject to a judicially determined limiting construction. Because I reach this conclusion, I need not address plaintiffs' argument that § 16.03 was repealed by the passage of Ord. § 10.15(6)(g). As to § 10.15(6)(g), I conclude that it is constitutional. To the extent that it is overbroad, it can be given a narrowing construction so

as not to violate the constitutional rights of the persons to whom it applies.

From the facts proposed by the parties, I find that the following are material and not in dispute.

## UNDISPUTED FACTS

Plaintiff Edward G. Kraimer, Jr. is one of the co-owners and president of plaintiff Kraimer Properties, LLC, which I will refer to as "Properties." Plaintiff Properties owns the property and structure located at 861 Grand Avenue, Schofield, Wisconsin, which is within the C–1 (commercial) district as defined by defendant City of Schofield's zoning code. Plaintiff Properties purchased the property in late 2002 or early 2003. Before then, plaintiff Kraimer had been one of the owners of the property and had operated it as a nightclub known as Grand Central, with a liquor license issued by defendant. By the time that Properties purchased the property, however, the nightclub was no longer in operation.

Sometime in early 2003, plaintiffs Gerald Morrell and Edward Kraimer agreed to open the Grand Central location as a non-alcoholic adult entertainment facility, a business in which plaintiff Morrell had experience. The two became business partners and equal owners of a new limited liability corporation known as Grand Daddy's LLC, with plaintiff Morrell the primary operator. Plaintiff Morrell's original business plan was to operate the proposed adult business as a nonalcoholic facility, offering adult entertainment to people between the ages of 18 and 22 and generating income through admission fees and sales of juice, soda and water. Plaintiff Grand Daddy's leased the former Grand Central location from plaintiff Properties, which was to receive rental income from Grand Daddy's, but no other income from the business.

Defendant City of Schofield is located in north central Wisconsin. It is one of several communities that make up the metropolitan area of Wausau, the largest municipality in the area. The city has approximately 2248 residents. It is classified as a 4th Class city under Wis. Stat. § 62.05(1)(d) and is governed by an elected eight-person city council and a mayor. Bordered by a lake and by the city of Wausau and with a river running through its northern portion, defendant has a limited area for prime commercial development.

Defendant is divided into various zoning districts: R–1 is single family residential; R–2 is two-family residential; R–3 is general residential; C–1 is first commercial; C–2 is second commercial; I–1 is limited industrial and I–2 is general industrial. Under defendant's zoning code, each zoning district has specified permitted and conditional uses. The classifications are "nested" within each other, from most restricted to least. A use that is either permitted or conditional in a more restricted zone is automatically a permitted use in all the less restricted zones.

In April 2003, plaintiffs Morrell and Kraimer learned from City Clerk Tracey Hoff that opening their proposed business as a nonalcoholic adult entertainment facility featuring exotic dancing required a Public Entertainment/Exhibition and Tavern Entertainment/Exhibition license under the public entertainment licensing ordinance, § 11.20, enacted in May 2002. Plaintiffs Kraimer and Morrell submitted an application for a public entertainment license to defendant on April 28, 2003. At the time, defendant did not have in effect any zoning ordinance related directly to the location of adult businesses. However, in addition to Ord. § 11.20, it had an ordinance regulating "adult entertainment in commercial establishments where alcoholic

beverages are sold, dispensed and/or consumed on the premises." Ord. § 16.03, Exh. SJ–10 to Hoff Aff., dkt. # 32.

City Attorney Philip Freeburg reviewed plaintiffs' application for a license and told Mayor James Krause on May 6, 2003, that in his opinion, the proposed business would require a conditional use permit to operate in the C–1 District. Freeburg advised Krause that an "indoor theater" is a conditional use in a commercial district, that is, one that is not permitted as a right "but under the proper circumstances and with the imposition of the appropriate conditions, may be granted as a conditional use in that particular zoning district." Exh. SJ–17 to Hoff Aff., dkt. # 32, at 2. Although plaintiffs' proposed use of their property did not fit precisely within the common definition of a theater as a building for dramatic performances or a building or area for showing motion pictures, Freeburg believed that under the ordinance, a conditional use permit "can be issued for 'other uses similar to or customarily incident to any of the above uses.'" Id. at 2–3. Freeburg concluded that plaintiffs' tavern would be similar to an indoor theater and that unless plaintiffs surrendered the alcohol licenses for the premises and obtained a conditional use permit for the proposed use, the public entertainment/exhibition license could not issue. Id. at 3. Plaintiffs applied promptly for a conditional use permit.

Pursuant to the requirements of the zoning code, a public hearing on plaintiffs' application was scheduled before the City Plan Commission and the City Council. In a memo sent to members before the June 4, 2003 meeting, Freeburg explained the conditional use permit and the issue to be decided. He set forth the specific standards of review provided in the zoning code for such applications and told the members that they could not consider "whether [they] approve of nude dancing in determining this conditional use permit. [They could] consider the standards under the ordinance, or any information before it relating to the effects of such a business in relation to those standards." Exh. SJ–15 to Hoff Aff., dkt. # 32. He added that the members "could address the effects of the use itself but not the content of the performance the use proposes." Id. at 3.

After a public hearing on the issue at which plaintiffs were allowed to present their reasons for the proposed business, the City Plan Commission voted to recommend denial of the conditional use permit request on the grounds that plaintiffs' proposed use was not consistent with other permitted conditional uses in a C–1 District, that it would diminish surrounding property value and stop further development and improvement of surrounding properties, that potential businesses would be reluctant to move into the area and that the business raised safety concerns because of the potential increase in crime.

On June 10, 2003, the City Council considered plaintiffs' applications for a conditional use permit and a public entertainment license. The council voted to deny the conditional use permit for the reasons relied upon by the City Plan Commission and to deny the public entertainment license because it "did not meet current zoning regulations." In other words, the proposed business activity did not have the necessary conditional use permit to operate in the C–1 District. At the time, § 11.20(c)(2)(dd)(3) of the Schofield Ordinances required compliance with zoning regulations (and other rules, regulations, ordinances and state laws) before a Public Entertainment License could issue. Had plaintiffs' proposed business been located in a C–2, I–1 or I–2 district, plaintiffs would not have needed a conditional use permit before opening their facility. After the permits were denied, plaintiff Grand

Daddy's opened as a "bikini bar," featuring bartenders in bikinis.

On July 24, 2004, the city council passed Ord. § 10.15(6)–1A(03), a specific zoning ordinance for adult oriented establishments. Before the vote, the council members received a memorandum from Freeburg, discussing the purpose of the proposed provision. Freeburg noted that the ordinance was to be a "safe harbor," intended to "control not the content of adult entertainment businesses, but the secondary effects often associated with those businesses." Exh. SJ–18 to Hoff Aff., dkt. # 32. Freeburg relied on materials compiled by the Wausau city planner that included studies from Phoenix, Arizona; Newport News, Virginia; Indianapolis, Indiana; Los Angeles, California; and Seattle, Washington, concerning the secondary effects of adult businesses. He provided summaries of the materials and the conclusions of the various studies to all the members of the planning commission and city council so that they had an opportunity to review them before the July 24 vote on the new ordinance.

In late 2003, defendant learned that Grand Daddy's had constructed a permanent stage and dressing room without obtaining a building permit. Defendant investigated the premises and concluded that the business was using the permanent stage and dressing room for regular performances and live entertainment exhibitions. In defendant's opinion, this was an alteration of the use of the premises from a tavern or restaurant with incident entertainment, which was permitted in the C–1 district, to an "indoor theater," primarily providing public performances and live entertainment and requiring a conditional use permit in the C–1 district. Defendant's building inspector informed plaintiffs of the alleged violation and the need to obtain a building permit. Plaintiffs applied for the building permit, but the City Council denied the application on the ground that plaintiffs had converted their primary use of their building in the C–1 district from a permitted use as a tavern to a conditional use as an indoor theater without applying for a conditional use permit. Until December 2003, plaintiffs did not present any live entertainment other than karaoke, for which they received an entertainment permit in the fall of 2003.

At present, defendant has no adult businesses. In its I–1 and I–2 zoning districts, it has available approximately 30 sites for such businesses, at least four of which are for sale or rent and one of which is owned by plaintiff Kraimer and operated as a tavern. All have access to city streets and city utilities.

Plaintiffs brought this suit in September 2003, alleging the unconstitutionality of the zoning code provision applying to indoor theaters; the amendment to the zoning code relating to adult oriented establishments enacted in July 2003; the Adult Entertainment Ordinance, § 16.03; and the Public Entertainment/Exhibition Licensing Ordinance, § 11.20. In November 2003, they moved for a preliminary injunction against enforcement of Ord. § 11.20, the public entertainment ordinance. They withdrew the motion after defendant agreed not to enforce the ordinance. On December 1, 2003, plaintiffs changed the tavern's format to offer entertainment by dancers dressed in bikinis. Defendant repealed § 11.20 the same month.

In the absence of § 11.20 and § 10.10, plaintiffs would have been presenting nude or semi-nude erotic dancing for the entertainment of their customers at Grand Daddy's beginning in April 2003.

## OPINION

### A. *Introduction*

■ The First and Fourteenth Amendment prohibit governments from

abridging "the freedom of speech." For constitutional purposes, the term "speech" encompasses much but not all nonverbal communication and expressive conduct. For example, it does not extend to public nudity in and of itself, but it does apply to non-obscene nude dancing, which is considered expressive conduct that conveys an erotic message. *Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 565–66, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (nude dancing is "expressive conduct within the outer perimeters of the First Amendment, though we view it as only marginally so"); *Jenkins v. Georgia,* 418 U.S. 153, 161, 94 S.Ct. 2750, 41 L.Ed.2d 642 (1974) (nudity alone does not place otherwise protected material outside First Amendment).

In this suit, plaintiffs are contending that defendant's ordinances have abridged their freedom of "speech" and specifically, their freedom to present non-obscene nude dancing that conveys an erotic message. They contend that on their face, the ordinances are overbroad or invalid prior restraints or both and as applied, they infringe upon plaintiff's efforts to express themselves as they wish.

■ To be constitutional, statutes that restrict or burden the exercise of First Amendment rights "must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). The burden is always on the government to prove that any abridgement of speech is constitutionally valid. In addition, in recognition of the importance of unabridged speech and the self-censorship that can result from unconstitutionally restrictive regulation, the law allows litigants to challenge a statute even if their own rights of free expression are not violated, if they have reason to believe that the statute is overly broad or acts as an impermissible prior restraint. The "possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted and perceived grievances left to fester because of the possible inhibitory effects of overly broad statutes." *Id.* at 612, 93 S.Ct. 2908.

■ Overly broad statutes are those that restrict constitutionally protected expression as well as expression that is unprotected. The phrase "prior restraint" refers to the governmental imposition of conditions on the expression of ideas and opinions. *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975). Laws that impose conditions that give "public officials the power to deny use of a forum in advance of actual expression" bear a heavy presumption of unconstitutionality. *Id.* Courts addressing such laws must assure themselves that the necessary procedural safeguards are in place to protect the exercise of First Amendment rights. An initial safeguard is objective criteria. A scheme that operates as a prior restraint is unconstitutional if it places " 'unbridled discretion in the hands of a government official or agency.' " *FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 225–26, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (quoting *Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)). A second safeguard is specific, reasonable time limits. *Id.* at 226, 110 S.Ct. 596 ("a licensing scheme creates the possibility that constitutionally protected speech will be suppressed when there are inadequate procedural safeguards to ensure prompt issuance of the license").

■ Defendant contends that its ordinances are neither overly broad nor invalid prior restraints. It relies on a line of

cases beginning with *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), in which the Supreme Court has held that legislators may impose zoning restrictions on adult oriented businesses if they do so with the dominant motive of containing the undesirable secondary effects of these businesses, such as increased drug use, public drunkenness, urban blight, the spread of crime, etc. Under the Court's approach, these laws may be analyzed as "content-neutral" time, place and manner regulations, which are constitutional if they are designed to serve a substantial government interest and if reasonably alternative avenues of communication remain available. *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 434, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002). "Content-neutral" regulations are those that do not focus on the content of the speech that is to be regulated but impose conditions that apply to all speech of any nature. For example, a ban on speech in the vicinity of a school is a content-neutral regulation, *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), content-neutral regulations are analyzed under an intermediate scrutiny standard. By contrast, "content-based" regulations distinguish favored speech from disfavored speech, are presumptively invalid under the First Amendment and are subject to strict scrutiny. *E.g.*, *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) (invalidating ban on speech that exempted speech relating to labor disputes).

## B. *Standing*

At the outset, defendant contends that not all the plaintiffs have standing to bring this suit because they have not suffered an actual injury caused by defendant and therefore, must be dismissed as plaintiffs. Defendant relies on the well developed law that no one can sue in federal court unless he has incurred an injury in fact (or is at risk of incurring one) that is fairly traceable to the actions of the defendant and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Without an actual injury, a plaintiff would be in the position of asking the court to give an advisory opinion rather than adjudicate a live controversy.

Defendant does not argue that plaintiffs lack standing to bring a facial challenge to the ordinances in question. It maintains, however, that plaintiff Properties cannot show any injury in fact from the ordinances as applied to it, because it cannot demonstrate an actual injury. It is merely the owner of the property at 831 Grand Avenue; it has no ownership interest in Grand Daddy's, LLC; it has never failed to receive its rental income from plaintiff Grand Daddy's; and it has never applied for any public entertainment license or conditional use permit. As to Grand Daddy's, defendant asserts that this plaintiff cannot make an "as applied" challenge to the operation and application of the conditional use permit zoning code, alcohol licensing provision and public entertainment license during the April–June 2003 time permit because it did not exist at the time.

■ It is not necessary to address the issue of plaintiffs Properties' and Grand Daddy's standing to challenge the ordinances as applied to them because plaintiffs have made no showing that any of them were injured by the manner in which the ordinances were applied. They have not discussed their "as applied" challenge or made any effort to explain its basis. Their facial challenge to the ordinances involves a claim that the ordinances always operate unconstitutionally. Had they wanted to challenge the ordinances as they were applied, they would have had to show

that the ordinance was applied in an unconstitutional manner. *Black's Law Dictionary* 233 (7th ed.1999). In other words, an "as applied" challenge to an ordinance involves an attack on the manner rather than the fact of an application of the ordinance. Such a challenge requires more than a showing that an allegedly unconstitutional law was applied to the challenger.

Because plaintiffs have not developed their contention that the ordinances at issue were applied to them unconstitutionally, I am treating this challenge as waived. (arguments not developed are considered waived). I am considering plaintiffs' challenge as one directed solely to the facial constitutionality of the ordinances in question.

I note, however, that Properties' interest is not as limited as defendant describes it. If, as the owner of the real estate, Properties could have shown that defendant's ordinances, as applied, circumscribed the uses to which it can put the real estate and its ability to market the property in the future, it could have established an actual injury. Moreover, plaintiff Grand Daddy's could have challenged the ordinances if they were applied unconstitutionally to it after its formation.

### C. The Ordinances at Issue

Keeping straight the ordinances that plaintiffs are challenging and why is no mean feat. First, plaintiffs challenge as unconstitutional prior restraints the requirements in Ord. § 10.10 for obtaining a conditional use permit to operate an "indoor theater" or similar facility in the C–I district. Second, they challenge as both overbroad and an unlawful prior restraint Ord. § 11.20, the Public Entertainment/Exhibition ordinance in effect until its repeal in December 2003. Third, they challenge as overbroad Ord. § 16.03, the Adult Entertainment Ordinance, which regulates the sale of alcoholic beverages in commercial establishments. Fourth, they

challenge as overbroad Ord. § 10.15(6), which applies to adult-oriented establishments. In addition, they contend that when § 10.15(6) was enacted, it had the effect of overruling § 16.03.

### D. Section 10.10—Conditional Use Permit

Under defendant's zoning code, "indoor theaters" are a conditional use in the areas designated as C–1, which means that in order to operate, they must have a conditional use permit. Plaintiffs challenge this requirement as an unlawful prior restraint because the criteria for obtaining a permit are not objective and there are no time limits to insure that decisions on applications are made promptly. Defendant takes issue with this characterization, arguing that its regulations are content-neutral, that is, they are regulations that address the harmful secondary effects of nude dancing rather than the dancing itself and therefore, do not violate any of plaintiffs' First Amendment rights. Its position is that so long as the zoning code does not prohibit plaintiffs and others wishing to present entertainment or exhibitions from opening their businesses *somewhere* in the city, the requirement of a conditional use permit cannot be characterized as an unlawful prior restraint.

■ The flaw in defendant's position is that its zoning code allows indoor theaters in the C–1 commercial district *in some circumstances,* that is, when it chooses to allow them. When a regulation requires governmental permission before persons may engage in expression, it must be analyzed under the strict constitutional tests that apply to prior restraints. Defendant has not zoned all indoor theaters of any sort out of the C–1 district. Instead, it has left open the possibility that some kinds of expressive entertainment will be permitted, but only those to which defendant decides to issue a conditional use

permit. Defendant is free to use zoning ordinances to set reasonable time, place and manner restrictions on First Amendment activity, whether it be newsstands, *Graff v. City of Chicago*, 9 F.3d 1309, 1317–18 (7th Cir.1993), or adult-oriented entertainment, *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), but if it requires governmental permission for the protected First Amendment activity, its restrictions must be analyzed as prior restraints.

 Section 10.10 of defendant's zoning ordinances addresses conditional uses. It provides that all applications for a conditional use permit are directed to the City Plan Commission, which will hold a public hearing and report its finding and recommendations to the City Council. The ordinance prohibits the City Plan Commission from recommending a conditional use unless it finds, among other things:

(a) That the establishment, maintenance or operation of the conditional use will not be detrimental to or endanger the public health, safety, morals, comfort or general welfare;

Defendant does not argue that the standard in subsection (a) is "narrow, objective, and definite," *Shuttlesworth v. Birmingham*, 394 U.S. 147, 150, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), and it would be difficult for it to do so. *See id.* (holding unconstitutional ordinance that conferred upon Birmingham City Commission authority to withhold parade permit if in its judgment "the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused"). The ordinance's standards do not "provide the guideposts that check the licensor and allow courts quickly and easily to determine whether the licensor is discriminating against disfavored speech." *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 758, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); *see also Staub v. City of Baxley*, 355 U.S. 313, 321, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958) (holding unconstitutional city ordinance disallowing solicitation of prospective members of organization without obtaining permit from city that may be granted upon consideration of character of application, nature of organization and its effects upon the general welfare of city's residents). Without such guideposts, a decision maker has nearly unlimited discretion to deny a permit for impermissible reasons. *Special Souvenirs, Inc. v. Town of Wayne*, 56 F.Supp.2d 1062, 1088 (E.D.Wis.1999).

 Not only does defendant's zoning ordinance fall short with respect to the specificity of its standards, it fails the time limits test as well. Section 10.10 of the ordinance directs applicants for conditional use permits to file their applications with the City Clerk, who is to forward the application to the City Plan Commission with a request for a public hearing and a report. The commission is required to hold "at least one public hearing on the proposed conditional use." Exh. SJ–12 to Hoff Aff., dkt. # 32. The ordinance does not set a time limit for the holding of the hearing or the forwarding of the commission's report to the City Council following the hearing. The only time limit is on the City Council, which has 90 days to consider the permit. If it does not act within that time, the application is deemed to have been denied.

 As in *FW/PBS, Inc.*, 493 U.S. 215, 110 S.Ct. 596, the lack of any time limit for the initial consideration of the application invalidates the conditional use scheme. In *FW/PBS, Inc.*, the City of Dallas's ordinance set a time limit on the approval of a license by the chief of police within 30 days of receipt of the application but did not set time limits within which the health department, fire department and building official had to inspect and approve the sites in

question. although such inspections and approval were prerequisites to the issuance of a license. The absence of any effective limitation on the decision making time (together with the lack of any avenue for prompt judicial review) rendered the ordinance unconstitutional to the extent that it was enforced against businesses engaged in First Amendment activity. *Id.* at 229, 110 S.Ct. 596. In this case, the ordinance sets a time limit on the City Council but none on the City Planning Commission, whose recommendation must precede action by the council. To be constitutional, an ordinance must require the licensor to decide within a specified, reasonable time whether to issue the license. Otherwise, a licensor may delay proceedings until the applicant gives up its effort to be heard or until the purpose for its speech no longer exists. "A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." *Id.* at 227, 110 S.Ct. 596.

Defendant argues that plaintiffs are wrong in characterizing the requirement of a conditional use permit for indoor theaters as an unlawful prior restraint without considering the holding of the Court of Appeals for the Seventh Circuit in *Blue Canary v. City of Milwaukee*, 270 F.3d 1156 (7th Cir.2001). In *Blue Canary*, the plaintiff bought a Milwaukee tavern that specialized in polka entertainment. She changed the name of the tavern and obtained a cabaret license that permitted her to provide entertainment in the form of dancing by performers, explaining to the licensing authorities that she was going to put on "Las Vegas style" nightclub performers; instead, she featured erotic dancing. When the city refused to renew her liquor license, she applied for a license to use the premises for a burlesque theater, again with erotic dancers but without the sale of alcoholic beverages. The city denied her application on the ground that the proposed burlesque theater did not conform to any similar land use listed in the zoning code as permissible within an area abutting a residential area. To the contrary, it was deemed similar to an adult motion picture theater, which was a use banned in the area of the plaintiff's tavern. On these facts, the court of appeals upheld the city's denial of the plaintiff's license application, holding that the city had not prohibited the plaintiff from operating a burlesque theater but had "merely prohibited the operation of such a theater in proximity to a residential neighborhood." *Id.* at 1157.

*Blue Canary* does not stand for the proposition that defendant urges, which is that a municipality can avoid all prior restraint challenges so long as it provides space somewhere in the city for the presentation of erotic dancing. Unlike defendant, the City of Milwaukee was not dealing with a conditional use provision that allowed *some* "indoor theaters" to operate within a particular zoning district; it was interpreting a zoning provision that prohibited adult motion picture theaters in the area of the plaintiff's tavern and deciding that the plaintiff's operation of a burlesque theater would be similar enough to fall within the same ban.

Finally, defendant argues that when the members of the City Plan Commission considered plaintiffs' permit application, they focused on the secondary activity that might flow from allowing Grand Daddy's to feature semi-nude entertainment rather than on the entertainment itself or on their moral judgments about such entertainment. Such an argument might be relevant if plaintiffs were bringing a challenge to the conditional use permit provision of the zoning code as it was applied to them and not a challenge to the constitutionality of the provision on its face. As I have

determined however, plaintiffs are not asserting any as applied challenge.

I conclude that the conditional use permit requirement for indoor theaters in the C–1 zoning area is an unconstitutional prior restraint because it does not include narrow, objective standards for the issuance of such permits or specific, reasonable time limits within which the applications must be acted upon.

### E. *Section 11.20: Public Entertainment/Exhibition*

#### 1. *Mootness*

The Schofield City Council repealed Ord. § 11.20 in December 2003. The question is whether that action moots plaintiffs' facial challenge to the ordinance. Defendant cites *Massachusetts v. Oakes,* 491 U.S. 576, 583–84, 109 S.Ct. 2633, 105 L.Ed.2d 493 (1989), for the proposition that once an allegedly unconstitutional law has been repealed, the facial challenge is moot because the ordinance cannot "chill protected expression in the future."

Plaintiffs do not deny that the repeal bars them from seeking injunctive relief, because it makes any such relief unnecessary, but they contend that they are entitled to seek actual damages for any injuries suffered as a result of the application of the ordinance before it was repealed, as well as declaratory relief as "a predicate to a damages award." *Crue v. Aiken,* 370 F.3d 668, 677 (7th Cir.2004) (citing *Wolff v. McDonnell,* 418 U.S. 539, 555, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

The availability of damages from the operation of a law repealed before or during prosecution of a challenge to the law is not one that has received significant attention in the civil context. The *Oakes* case cited by defendant was a criminal case in which the defendant had been convicted on a state statute he contended was overly broad. The state's supreme court agreed with the defendant that the statute was overbroad; the state obtained a writ of certiorari from the United States Supreme Court but repealed the statute before the Supreme Court could hear the case. A plurality of the Court held that the repeal rendered the appeal moot and voted to send the case back to the state courts to decide whether it would be constitutional to apply the original version of the statute to the defendant. The remaining justices agreed that the writ should be dismissed but did not believe that the state should be able to prosecute the defendant under a law that was unconstitutional when defendant committed the allegedly illegal acts. As *Oakes* demonstrates, the circumstances in a criminal case are so different from those in a civil case that it would be difficult to extrapolate a rule from it that would apply to cases such as plaintiffs'.

*Crue,* 370 F.3d 668, was a civil case in which the court of appeals held squarely that damages may be obtained in a case in which the defendants imposed a prior restraint on communication. The court did not mention *Oakes,* perhaps because it did not believe that the case was relevant given the civil context of the *Crue* suit. In *Crue,* students at the University of Illinois sued for injunctive and declaratory relief and damages when the university chancellor directed employees, students and others connected with the university not to have any contact with student athletes whom the university was recruiting, unless they had the express authorization of the director of athletics. The catalyst for the directive was an ongoing controversy concerning the university's Indian mascot; the plaintiffs were interested in writing prospective athletes about the controversy. Although the chancellor had resigned and the directive had been rescinded, the court of appeals held that these actions did not moot plaintiffs' claims for damages. It upheld the district court's awards of nominal damages and its declaration that the

directive violated the plaintiffs' First Amendment rights.

In another civil case involving a repealed ordinance, *Clarkson v. Town of Florence*, 198 F.Supp.2d 997 (E.D.Wis.2002), the district court held that repeal did not moot the plaintiff's challenge to the constitutionality of the ordinance on its face. Plaintiff alleged that while the ordinance was in effect, she had been warned not to present erotic dancing for fear of losing her liquor license, she had been unable to sell her tavern business, several customers had stayed away from her tavern because they did not know "what was going on with the ordinance" and she had suffered anxiety, smoked more and lost sleep. *Id.* at 1003. The district court held that these alleged harms were sufficient to show that the plaintiff had a sufficient personal stake in the outcome of the controversy to defeat application of the mootness doctrine.

In this case, plaintiffs have alleged that they were unable to present nude dancing in April 2003, when they wanted to, because § 11.20 was in effect. They say that they censored themselves by refraining from presenting the dance entertainment they would have presented had it not been for the existence of § 11.20. Repeal of the ordinance in December 2003 did nothing to eradicate the effects that plaintiffs felt eight months earlier. Therefore, I am persuaded that the issue is not moot.

## 2. The constitutionality of § 11.20

While city ordinance § 11.20 was in effect, any person wishing to offer any kind of entertainment for paid admission was required to obtain a license in advance. § 11.20(a). In addition, any one offering entertainment consisting of an "act, stunt, music, song, or dance by performers" had to maintain a current list of all performers performing on the premises and provide it to any police officer upon request.

§ 11.20(a)(2). No person licensed to sell alcoholic beverages was to present entertainment without a license to do so, whether or not an admission fee was charged, § 11.20(b)(1). Anyone wishing to obtain a license had to submit an application complying with the ordinance's requirements to the City Clerk for forwarding to the City Council. § 11.20(c). The Building Inspector and the Fire and Police Departments were required to investigate each application and furnish the City Clerk with the information derived from their investigations and their recommendations for granting or denying the license. The City Clerk was to transmit the application and the findings and recommendations to the City Council, which had to approve the application if certain conditions were met, including compliance with all applicable rules, regulations, ordinances and state laws, including zoning regulations. § 11.20(dd). Licenses issued under this section were good for no more than one year and could be transferred to another premises within the city only upon the approval of the City Council. § 11.20(ff). The ordinance contained no time limits for the approval of entertainment licenses.

Plaintiffs challenge § 11.20 as overbroad, particularly in its extensive specification of activities for which a license was required, and as an unconstitutional prior restraint. Defendant does not counter with any argument to the contrary. Its silence is a waiver of any defenses it might have mounted because, as I noted above, the burden is on the government to prove the constitutionality of any abridgement of expressive speech.

Defendant argues, however, that plaintiffs cannot argue that § 11.20 was unconstitutional as applied to them because they failed to obtain the conditional use permit that was the necessary precondition to obtaining an Public Entertainment/Exhibi-

tion license. This argument is unnecessary, because I have found that plaintiffs have waived their "as applied" claim. Had they not done so, however, defendant's argument would not bar them from challenging § 11.20. Defendant cannot avoid the consequences of its invalid regulation on public entertainment by putting up the shield of an equally invalid zoning regulation (the conditional use permit requirement).

I conclude that § 11.20 was unconstitutional while it was in effect and that its repeal does not moot plaintiffs' claim for damages.

### F. Section 16.03: the Adult Entertainment Ordinance

Defendant's ordinance § 16.03, the Adult Entertainment ordinance, regulates the sale of alcoholic beverages in commercial establishments. The ordinance defines "establishments dealing in alcoholic beverages" as including hotels, motels, restaurants, night clubs, country clubs, cabarets, meeting facilities utilized by any religious, social, fraternal or similar organization, bottle clubs and any business or commercial establishment where one can consume alcoholic beverages. It does not include private residences. The ordinance lists the acts that are prohibited in those establishments, which range from exposing to public view any portion of the female breast below the top of the areola "or any simulation thereof" or exposing genitals, pubic area, vulva, anus, anal cleft or cleavage or buttocks "or any simulation thereof," to engaging in sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation, any sexual act which is prohibited by law, touching, caressing, fondling of the breasts, buttocks, anus or genitals or the simulation thereof. In addition, the ordinance prohibits the exposition of any graphic representation, including pictures or the projection of film, that depicts the specified bodily areas or prohibited sexual acts. Violation of the

ordinance may result in revocation, suspension or non-renewal of the owner's liquor license and forfeiture of not more than $300, together with the costs of prosecution and imprisonment in the county jail for non-payment. Each day of a violation constitutes a new and separate offense.

██ Plaintiffs challenge this ordinance as facially unconstitutional because it is overbroad; it applies to conduct defendant may not legitimately regulate because it has no reason to believe that any harmful secondary effects would follow from the expressive conduct. *Schultz v. City of Cumberland*, 228 F.3d 831, 849 (7th Cir. 2000). Plaintiffs may challenge an overbroad law even if they are engaged in activity that could validly be covered by the regulation, but only when the threat presented by the law is real and substantial and not susceptible to a narrowing construction. *Id.* at 848, 850.

██ Like the ordinance at issue in *Schultz*, § 16.03 is overbroad because it makes no exceptions for live performances with serious artistic, social and political value or for exhibitions of film or art works. It necessarily includes within its sweep activities and establishments that could not plausibly be believed to cause secondary effects, such as graphic representations of prohibited body parts produced with serious artistic or educational intent and live performances of artistic or social merit; it applies to too broad a range of establishments; and it prohibits even performances that occur only infrequently. Moreover, unlike the ordinance at issue in *Schultz*, 228 F.3d 831, § 16.03 is not confined to "sexually oriented businesses" and it does not apply only to businesses that "regularly feature" sexually oriented entertainment.

On its face, § 16.03 would apply to a meeting of pediatricians at a conference

room at a local motel, attending a presentation on recognizing the signs of sexual and physical abuse of young children, so long as alcoholic beverages were being served in the motel's bar. It could apply as well to the serving of wine at the opening of an art exhibit, if nudes were the subjects of any sculpture or painting. Although defendant argues that the ordinance does not interfere with any entertainment or exhibition but merely operates to prevent the combination of entertainment and liquor, its argument is unpersuasive when applied to all of the commercial establishments covered by the ordinance. Facilities that do not regularly feature sexually oriented entertainment will not want to put their liquor licenses at risk by allowing activities or images on their premises that might be covered by § 16.03. Instead, they will be impelled to act as the government's censor so as to protect their valuable licenses.

Defendant could not reasonably believe that every activity and every establishment to which the ordinance could apply would give rise to the kind of negative secondary effects that have justified special regulations and special zoning in cases such as *Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) (city can decrease crime and blight associated with adult businesses through exercise of zoning power without violating First Amendment so long as it leaves the quantity and accessibility of speech substantially undiminished), and *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 46–47, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (ordinance that did not ban adult theaters altogether is properly analyzed as time, place and manner regulation; such content-neutral regulations are acceptable so long as they are designed to serve substantial government interest and do not place unreasonable limit on alternative avenues of communication).

Defendants argue that an overbreadth analysis is out of place in evaluating § 16.03, which is not a complete ban on alcohol at adult establishments but a ban on nudity and certain erotic movements on the premises of adult establishments licensed to serve alcohol. The only appropriate analysis, they contend, is the four-part test set out first in *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) and adopted by the Court of Appeals for the Seventh Circuit in *Ben's Bar, Inc. v. Village of Somerset*, 316 F.3d 702, 713 (7th Cir.2003). Defendant misses the point. Its ordinance is not limited to sexually oriented businesses as was the Somerset ordinance at issue in *Ben's Bar*, but extends to a much larger group of businesses and facilities that may incidentally feature activity or images that come within the broad language of § 16.03. In this case, therefore, the initial analysis must be one of overbreadth. No such analysis was necessary in *Ben's Bar* because the plaintiffs never contended that the ordinance was overbroad. As a result, the court of appeals addressed only the constitutionality of a ban on the sale of all alcoholic beverages in sexually oriented businesses that the village had enacted "to promote the health, safety, and general welfare of the citizens of the Village." *Id.* at 705.

In *Schultz*, 228 F.3d 831, the court of appeals found a way of limiting the construction of the challenged ordinance to make it constitutional. The ordinance applied explicitly to only those facilities that "regularly featured" sexually oriented entertainment. Although the ordinance did not define the term "regularly featured," the court found that it could be interpreted to mean "always features." *Id.* at 850. A "venue falls within the definition for adult theater and adult cabaret only if it features nudity, semi-nudity or specified sexual content as the permanent focus of its

business and gives special prominence to such content on a permanent basis." *Id.*

Section 16.03 is not susceptible to any similar narrowing construction. It makes no reference to "regular" performances or exhibitions and it covers far too broad a range of facilities and activities or images. Attempting to narrow it to make it constitutional is a job for the city council of Schofield and not for this court.

### G. *Section 10.15(6)—Adult–Oriented Establishments*

■■■ In July 2003, defendant amended its zoning code by enacting §§ 10.15(6)(b)(36) and 10.15(6)(g). The new provision defines "Adult–Oriented Establishments" as adult bookstores, novelty stores, video stores, motion picture theaters and cabarets, as well as "premises to which public patrons or members of a private organization are invited or admitted and which are physically arranged so as to provide booths, cubicles, rooms, compartments or stalls separate from the common areas of the premises for the purpose of viewing adult entertainment or wherein an entertainer provides adult entertainment to a member of the public, a patron or a member of a private organization, whether or not such adult entertainment is held, conducted or operated for profit, direct or indirect." § 10.15(6)(g)–2.

An "adult cabaret" is defined as a "nightclub, bar, restaurant or similar commercial establishment which regularly features (I) persons who appear in a state of nudity or seminudity, (ii) live performances which are characterized by the exposure of specified anatomical areas or specified sexual activities, or (iii) films, motion pictures, video cassettes, slides or other photographic reproductions which are characterized by the depiction or description of specified sexual activities or specified anatomical areas." § 10.15(g)–2–C. "Adult entertainment" means "any exhibition of motion pictures, live performances, display or dance of any type, which has as its dominant theme, or is distinguished by or characterized by an emphasis on, any actual or simulated specified sexual activities or specified anatomical areas ... or the removal of articles of clothing to appear totally nude or to display a nude genital area or female nude breast or breasts." § 10.15(g)–2–D.

"Specified sexual activities" means "simulated or actual (I) showing of the human genitals in a state of sexual stimulation or arousal; or (ii) acts of masturbation, sexual intercourse, sodomy, bestiality, necrophilia, sadomasochistic abuse, fellatio, cunnilingus; or (iii) fondling or erotic touching of human genitals, pubic region, buttocks or female breasts." § 10.15(6)(g)–2–E. "Specified anatomical areas" means (I) human genitals, pubic region, buttocks, anus, or the areola of a female breast of breasts less than completely and opaquely covered by clothing; or (ii) human male genitals in a discernibly turgid state, even if opaquely covered by clothing." § 10.15(5)(g)–2–E.

Adult–Oriented Establishments are permitted uses in the I–1 and I–2 (Industrial) districts. § 10.15(b)(b)–36. A customer entrance to one of these establishments may not be located within 500 feet of a residence zoning district boundary in the city, within 500 feet of the city limits or within 1000 feet of any customer entrance to any existing Adult–Oriented Establishment. The ordinance does not exempt private residences.

Plaintiffs challenge the new ordinance on several grounds. First, it is an impermissible reduction of the opportunities for adult expression. Second, it is overbroad. Third, it is not narrowly tailored; it intrudes too far into a dancer's right to express an erotic message through her dance movements.

As to the first objection, plaintiffs read Justice Kennedy's concurring opinion in

*City of Los Angeles v. Alameda Books,* 535 U.S. 425, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) too broadly. He expressed concern that zoning restrictions might be used to reduce the quantity of speech, rather than limited to reducing the total secondary effects of adult businesses. "The necessary rationale for applying intermediate scrutiny is the promise that zoning ordinances like [Los Angeles's] may reduce the cost of secondary effects without substantially reducing speech." *Id.* at 450, 122 S.Ct. 1728. He did not suggest, as plaintiffs seem to think, that moving adult entertainment venues out of certain zoning districts was the equivalent of reducing speech. His concern was the overall quantity of speech that would remain.

Plaintiffs argue that defendant has reduced the opportunity for adult speech by passing § 10.15(b), requiring adult businesses to be located only in zoning districts I–1 and I–2 but they have made no showing that this restriction will reduce the amount of such speech in the city of Schofield. The undisputed facts show that a number of suitable premises are available in the industrial zoning districts. It is irrelevant if § 10.15(6) has eliminated some of the possible sites for adult businesses if other sites are still available within the city for such businesses. *North Avenue Novelties, Inc. v. City of Chicago,* 88 F.3d 441, 445 (7th Cir.1996) ("The Constitution does not mandate that any minimum percentage of land be made available for certain types of speech. What it does require is that zoning schemes that regulate the location of speech provide a 'reasonable opportunity' to disseminate the speech at issue.").

As to overbreadth, plaintiffs argue that § 10.15(6) makes no exemption for serious works of art or for private residences. However, it is not a realistic possibility that the ordinance can be read as applying to works of art sold in art galleries or books sold in general bookstores. The provisions applicable to "adult bookstores, adult novelty stores or adult video stores" specify that the establishment must have as one of its "principal purposes" the sale or rental of the adult materials and that establishments are considered to be "commercial" if they have gross revenues or gross square footage from the sale of otherwise covered books in excess of fifty percent of the establishment's gross revenue or gross square footage.

As to the possible application of the ordinance to private residences or episodic stag parties in private offices, restaurants, hotels or motels or performances of serious works of art in businesses or clubs, defendant points out that the statute can be given a narrowing construction. In *Schultz,* 228 F.3d at 850, the court of appeals found the Cumberland ordinance overbroad in its potential application to performances of serious works of art or exhibitions of serious art work, but, as explained earlier in this opinion, construed the phrase "regularly features" narrowly to mean "always features." A similar construction of "regularly features" in subsections (2)(B) and (2)(C) of § 10.15(6)(g)(2) eliminates the overbreadth problem that plaintiffs have identified.

As to the contention that § 10.15(6)(g) is not narrowly tailored, plaintiffs argue that the ordinance goes too far because it applies to a dancer's right to express an erotic message through her dance movements. This contention is easily answered. Defendant has not denied plaintiffs an opportunity to express the message they wish to convey; it has merely identified the locations where the message may be conveyed. Although plaintiffs try to equate the zoning provision to a prohibition on dance movements because violation means consignment "to the gulag of the industrial district," Plts.' Br. in Supp. of M.

for Summ. Jmt., dkt. # 24, at 47, this argument has little resonance in light of the Supreme Court's approval of similar efforts to limit adult oriented establishments to special zoning districts or specified locations. In *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), for example, the Court upheld the constitutionality of a zoning ordinance that limited the location of adult motion picture theaters because it found the ordinance was aimed not at the content of films shown at the theaters but rather at the secondary effects of such theaters on the surrounding community. Once it found that the predominant purpose of the ordinance was "to prevent crime, protect the city's retail trade, maintain property values, and generally 'protec[t] and preserv[e] the quality of [the city's] neighborhoods, commercial districts and the quality of urban life,'" it held that the ordinance was to be analyzed as a form of time, place and manner regulation, *id.* at 46, 106 S.Ct. 925, regardless of its focus on certain kinds of expression.

Plaintiffs do not suggest that defendant did not have compelling reasons to pass § 10.15(6)(g). Defendant's city council stated that it was enacting the ordinance out of its desire to minimize and control the adverse secondary effects of adult-oriented establishments and thereby "[p]rotect, [sic] health, safety and welfare of the citizens of Schofield; [p]rotect the citizens from increased crime; [p]reserve the quality of life; [p]reserve the property values and character of surrounding neighborhoods and businesses; and, [d]eter the spread of urban blight." Under *Renton*, 475 U.S. at 48, 106 S.Ct. 925, these are adequate reasons "to establish that defendant's pursuit of its zoning interests here was unrelated to the suppression of free expression."

Plaintiffs have not asserted that the materials defendant relied upon for its findings were inadequate. In *Renton*, the Court made it clear that cities may rely on the experience of other cities when enacting zoning ordinances like defendant's. *Id.* at 50–52, 106 S.Ct. 925. They need not conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses." *Id.* at 51–52, 106 S.Ct. 925.

Finally, beyond arguing unsuccessfully that the ordinance reduced the amount of expression in the city, plaintiffs have not shown that the ordinance does not allow for reasonable alternative avenues of communication. Therefore, I conclude that plaintiffs have failed to show that § 10.15(6)(g) is an unconstitutional abridgement of plaintiffs' ability to express themselves.

### H. *Damages*

Two issues bear on the subject of damages. The first is plaintiffs' contention that had § 11.20 (the Public Entertainment/Exhibition ordinance) and § 10.10 (the conditional use permit requirement) not been in effect in April 2003, they could have begun offering non-obscene nude dancing at Grand Daddy's so that by July 2003, when defendant enacted § 10.15(6), limiting adult entertainment facilities to zoning districts I–1 and I–2, Grand Daddy's would have been "grandfathered" in and could have continued to operate as a nude dancing venue in the C–1 zoning district.

In Wisconsin, a landowner that establishes a valid nonconforming use when an ordinance comes into effect may continue that use. (A nonconforming use is a use of land for a purpose not permitted in the district in which the land is situated. *Waukesha County v. Seitz*, 140 Wis.2d 111, 114–15, 409 N.W.2d 403 (Ct. App.1987). The burden is on the property

owner to prove that the nonconforming use was in existence at the time the ordinance was passed. He must show that the use "was so active and actual that it can be said that he has acquired a 'vested interest' in its continuance." *Walworth County v. Hartwell*, 62 Wis.2d 57, 61, 214 N.W.2d 288, 290 (1974)).

Although I am not prepared to find that plaintiffs would have been able to prove a nonconforming use of Grand Daddy's as of July 2003 under Wisconsin law, defendant has not opposed plaintiffs' contentions on this point. Arguments not made are waived. *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express*, 181 F.3d 799, 808 (7th Cir.1999). Therefore, I conclude that Grand Daddy's would have been a nonconforming use as of July 2003 had it not been for the existence of the unconstitutional ordinances, § 10.10 and § 11.20.

On the second issue, whether plaintiffs would have sold alcoholic beverages at Grand Daddy's as of April 2003, I make no finding. The facts relating to that issue are in dispute.

### ORDER

IT IS ORDERED that the motion for summary judgment filed by plaintiffs Edward G. Kraimer, Jr., Gerald J. Morrell, Grand Daddy's, LLC and Kraimer Properties, LLC is GRANTED with respect to plaintiffs' claims that defendant City of Schofield's Ordinances §§ 10.10, 11.20 and 16.03 are unconstitutional and that the repeal of § 11.20 does not moot plaintiffs' challenge to that ordinance; it is DENIED with respect to plaintiffs' claim that § 10.15(6)(g) is unconstitutional. FURTHER, IT IS ORDERED that defendant's motion for summary judgment is DENIED with respect to its claims that §§ 10.10, 11.20 and 16.03 are constitutional and GRANTED with respect to its claim that § 10.15(6)(g) is constitutional.

Defendant's Ordinance § 10.10 is DECLARED to be an unconstitutional prior restraint insofar as it relates to facilities within the C–1 zoning district characterized as indoor theaters or similar to indoor theaters and its Ordinance § 16.03 is DECLARED unconstitutional as overly broad. Its Ordinance § 10.15(6)(g) is DECLARED constitutional provided that "regularly featured" is construed to read "always features." Defendant is ENJOINED from enforcing § 10.10 with respect to facilities characterized as indoor theaters or similar to indoor theaters and from enforcing § 16.03 in any respect.

The parties have stipulated to a process for resolving plaintiffs' damages claims without involving the court. Therefore, the clerk of court is directed to enter judgment in conformance with this order and close this case.