In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3543

Blue Canary Corporation,

Plaintiff-Appellant,

v.

City of Milwaukee,

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 99 C 891--John W. Reynolds, Judge.

Argued March 30, 2001--Decided May 29, 2001

  Before Flaum, Chief Judge, and Posner and
Evans, Circuit Judges.

  Posner, Circuit Judge.  The plaintiff,
appealing from the grant of summary
judgment in favor of the defendant, the
City of Milwaukee, argues that the City's
refusal to renew the plaintiff's liquor
license violated the free speech clause
of the First Amendment. The plaintiff had
bought a tavern in Milwaukee that
entertained its patrons with polkas. It
obtained a liquor license and shortly
afterward changed the name of the tavern
from Blue Canary to Runway 94 and applied
for and received a "cabaret license,"
which permits a tavern to provide
entertainment in the form of dancing by
performers. On the application form the
plaintiff's manager checked "floor shows"
rather than "exotic dancers/male and/or
female strippers," and at a hearing on
the application she explained that she
wanted to put on "Las Vegas style"
nightclub acts. But instead, after
receiving the cabaret license, the tavern
put on shows in which the performers
danced in only pasties and bikini
bottoms, which the licensing authority
believed constituted "exotic dancing"
rather than "Las Vegas style" dancing
even though the dancers did not strip on
stage but merely appeared, as it were,
fully unclothed down to the pasties and
bikini bottoms. The plaintiff reluctantly

applied for a supplementary license to permit "exotic dancing." This was denied, but the tavern continued to exhibit "exotic dancing" in the form described, with some weird touches, such as dancers who sucked on their breasts while hanging upside down. The erotic character of the entertainment was not concealed. One dancer allowed a customer to slip money between her breasts. Another acknowledged that she tried to "turn guys on" in order to get tips. Others simulated intercourse.

When the tavern's liquor license came up for renewal at the end of its one-year term, a hearing was held at which residents of the immediate neighborhood opposed renewal on grounds of noise, traffic, and litter, but also moral disapproval of the entertainment. One neighbor complained that a person had come out of the tavern and urinated in his mailbox. The license was not renewed, and this suit ensued.

The plaintiff complains primarily about the vagueness of the ordinance governing grants and renewals of liquor licenses-- which so far as bears on this case requires merely a determination of "whether or not the applicant's proposed operations are basically compatible with the normal activity of the neighborhood in which the licensed premises is to be located," Milwaukee Code of Ordinances sec. 90-35-1-e--and of the category in the application form "exotic dancers/male and/or female strippers." The vagueness of the category is relevant, however, only if the City violated the plaintiff's rights by refusing to renew its liquor license. If it did, the next question would be whether the City committed a further violation by refusing to grant an "exotic dancers" supplement to the plaintiff's cabaret license. But if the City was entitled to conclude that thenature of the entertainment in the plaintiff's tavern, whatever one calls it, was so inappropriate to the neighborhood as to justify not renewing the liquor license (since the plaintiff was uninterested in switching to a form of entertainment that the neighbors would not have objected to), it is irrelevant whether the entertainment was or was not "exotic dancing."

The plaintiff repeats its complaint

about vagueness under the rubric of "prior restraint." The term refers to requiring governmental permission to engage in specified expressive activity, in contrast to punishing the activity after it has taken place. Alexander v. United States, 509 U.S. 544, 550 (1993); Freedman v. Maryland, 380 U.S. 51, 57 (1965); Bantam Books, Inc. v. Sullivan, 372 U.S. 58 (1963). In the England of Shakespeare's day and indeed for centuries afterwards, a play could not be exhibited in a theater without a license from the Lord Chamberlain. That was a classic prior restraint. Blackstone defined freedom of speech and the press as freedom from prior restraints, 4 William Blackstone, Commentaries on the Laws of England 151-53 (1769); see Pitts burgh Press Co. v. Pittsburgh Commission on Human Relations, 413 U.S. 376, 389-90 (1973); MacDonald v. City of Chicago, 243 F.3d 1021, 1031 (7th Cir. 2001); Thomas v. Chicago Park District, 227 F.3d 921, 923-24 (7th Cir. 2000); Hudson v. Chicago Teachers Union, 743 F.2d 1187, 1192 (7th Cir. 1984); City of Paducah v. Investment Entertainment Inc., 791 F.2d 463, 466 (6th Cir. 1986), and while the First Amendment has not been interpreted to be limited so, the idea that prior restraints are particularly harmful to expressive freedoms has lingered. Besides the cases that we have cited already, see Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 558-59 (1975); Near v. Minnesota, 283 U.S. 697, 713-16 (1931); Stokes v. City of Madison, 930 F.2d 1163, 1168 (7th Cir. 1991); Auburn Police Union v. Carpenter, 8 F.3d 886, 903 (1st Cir. 1993).

But the rationale for condemning prior restraints limits the scope of the concept. By "prior restraint" Blackstone and modern courts alike mean censorship-- an effort by administrative methods to prevent the dissemination of ideas or opinions thought dangerous or offensive. The censor's concern is with the content of speech, and the ordinary judicial safeguards are lacking. "Prior restraints" that do not have this character are reviewed under the much more permissive standard applicable to restrictions merely on the time, place, or manner of expression. See, e.g., MacDonald v. City of Chicago, supra; Thomas v. Chicago Park District, supra. Permit requirements are routinely imposed

on the use of public parks and other public spaces for expressive uses, including entertainment and political demonstrations; and the sale of liquor is unexceptionably a licensed activity even when the licensed restaurant or tavern provides entertainment for its customers, and even though the Twenty-First Amendment is no longer deemed a limitation on First Amendment rights. 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 515-16 (1996). The prior-restraint issue that the plaintiff attempts to raise is thus a red herring. There was nothing amiss in the City's requiring the plaintiff to seek a renewal of its liquor license annually.

Nor was there anything amiss in the City's taking into account, in deciding whether to renew the license, the character of the entertainment that the plaintiff served with its drinks. It is true that the "exotic dancing" was not, or at least is not contended to have been, obscene (despite the breast sucking--which was not nursing), and therefore illegal. Nor did it violate any state or city law--if there is one in Wisconsin or Milwaukee--against public nudity, compare City of Erie v. Pap's A.M., 529 U.S. 277 (2000); Barnes v. Glen Theatre, Inc., 501 U.S. 560 (1991), because the dancers were scantily clad, rather than nude. But this is not a case about banning exotic (or erotic) dance performances on the ground of their being obscene or violating the nudity laws. The City does not ban the kind of entertainment that Runway 94 offered. We are told without contradiction that there are 22 such establishments in Milwaukee. All the City is trying to do is to zone them out of areas in which neighbors object to the presence of a strip joint. The plaintiff is emphatic (this is the core of its objection to the "exotic dancers" category) that Runway 94 was not a strip joint, because the dancers stripped down to their pasties and bikini bottoms before appearing on stage, but the difference between stripping and having already stripped strikes us as minute, and so for want of a better term we'll call Runway 94 a strip joint. Countless cases allow municipalities to zone strip joints, adult book stores, and like erotic sites out of residential and the classier commercial areas of the city or town. City of Renton v. Playtime

Theaters, Inc., 475 U.S. 41, 49-52 (1986); Young v. American Mini Theatres, Inc., 427 U.S. 50 (1976) (plurality opinion); Schultz v. City of Cumberland, 228 F.3d 831, 845-46 (7th Cir. 2000); North Avenue Novelties, Inc. v. City of Chicago, 88 F.3d 441 (7th Cir. 1996); Boss Capital, Inc. v. City of Casselberry, 187 F.3d 1251, 1253 (11th Cir. 1999); Richland Bookmart, Inc. v. Nichols, 137 F.3d 435 (6th Cir. 1998); Walker v. City of Kansas City, 911 F.2d 80, 90 n. 13 (8th Cir. 1990). Establishments that purvey erotica, live or pictorial, tend to be tawdry, to be offensive to many people, and to attract a dubious, sometimes a disorderly, clientele. Liquor and sex are an explosive combination, so strip joints that sell liquor are particularly unwelcome in respectable neighborhoods. The impairment of First Amendment values is slight to the point of being risible, since the expressive activity involved in the kind of striptease entertainment provided in a bar has at best a modest social value and is anyway not suppressed but merely shoved off to another part of town, where it remains easily accessible to anyone who wants to patronize that kind of establishment.

Because the standard in the ordinance is compatibility with the "normal" activity of the neighborhood and the City relies heavily on testimony by neighbors to determine what that activity is, the plaintiff asks us to consider the possibility that a straitlaced community might exclude all erotic cultural expression on the ground that any public recognition of sex was abnormal activity in that community--and so Salome's "Dance of the Seven Veils" (in Wilde's play or Strauss's opera), the Afternoon of a Faun, and countless Balanchine ballets could not be performed. But we are dealing in this case with the ordinance not of a small town but of a major city, which is neither homogeneous nor entirely residential, and so the ordinance has not resulted in the exclusion of the erotic even from bars, but merely in the segregation of bars that present erotic entertainment from other land uses in the city. The ordinance is limited, moreover, to bars (and to restaurants that serve liquor). It is not a regulation of theaters or concert halls, but only of places where liquor is served. And the

City has not delegated the zoning decision to the neighbors, but merely relies upon them to inform the City concerning the normal activity of their neighborhoods. The plaintiff was entitled to a hearing on its application to renew its license, Milwaukee Code of Ordinances sec. 90-11, and received one--at which much evidence was presented of the profoundincompatibility of a strip joint with the normal activity of the immediate neighborhood, a residential neighborhood whose normal activity is raising kids in a tranquil environment rather than fending off the drunken patrons of a noisy strip joint. So far as appears, the plaintiff could have reopened Runway 94 a few blocks away. The First Amendment would not have been damaged by such a move.

Affirmed.