In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1608

SIX STAR HOLDINGS, LLC, and FEROL, LLC,

*Plaintiffs-Appellees*,

*v.*

CITY OF MILWAUKEE,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:10-cv-893 — **Lynn Adelman**, *Judge*.

ARGUED NOVEMBER 9, 2015 — DECIDED APRIL 13, 2016

Before WOOD, *Chief Judge*, ROVNER, *Circuit Judge*, and
SHAH, *District Judge*.[*]

WOOD, *Chief Judge*. This case requires us to visit the world
of strip clubs—establishments that no one seems to want,
officially, but that are somehow quite lucrative. Prior to

[*] Of the Northern District of Illinois, sitting by designation.

March 1, 2012, the City of Milwaukee had various licensing requirements for this type of place, but it no longer defends their constitutionality. The First Amendment imposes a "heavy presumption" against the "constitutional validity" of prior restraints on speech. *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). Prior restraints that are viewpoint- and content-neutral and impose a limitation only on the time, place, and manner of speech are more likely to pass muster. See *City of Lakewood v. Plain Dealer Publ'g. Co.*, 486 U.S. 750, 763 (1988); *Blue Canary Corp. v. City of Milwaukee*, 251 F.3d 1121, 1123 (7th Cir. 2001). They are permissible if, and only if, there are procedural safeguards that ensure that the decisionmaker approving the speech does not have "unfettered discretion" to grant or deny permission to speak. *Plain Dealer Publ'g. Co.*, 486 U.S. at 755–57; *Freedman v. State of Maryland*, 380 U.S. 51, 58–59 (1965).

Before us now are two Milwaukee ordinances, now repealed, that required certain licenses before a business was permitted to offer nude or partially nude entertainment. (When we say "nude," we mean to include both total and partial nudity; the difference between the two is immaterial for this case.) Two companies—Six Star Holdings, LLC, which applied for a license under one of these ordinances, and Ferol, LLC, which did not—challenged these ordinances, seeking injunctive relief and damages. Once the ordinances were repealed, the plaintiffs dropped their requests for injunctive relief but continued to pursue damages. The latter request saves the case from mootness. See *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 608–09 (2001). The district court held that the ordinances addressed time, place, and manner of expression, but that they did not include the necessary procedural safe-

guards. A jury then decided that but for the unconstitutional ordinances, Ferol would have opened a club providing nude entertainment. It awarded Ferol compensatory damages in the form of lost profits, and gave Six Star nominal damages.

The City has appealed. It argues that Ferol had no injury and therefore no standing to challenge the ordinances. It also challenges Ferol's theory of causation and the award of nominal damages to Six Star. Finding no merit in any of these points, we affirm the district court's judgment.

**I**

Jon Ferraro saw a business opportunity in what he regarded as a shortage of nude-entertainment clubs in the Milwaukee area. He created, and is the majority owner of, the two plaintiff limited-liability companies: Six Star and Ferol. (He owns other similar venues elsewhere in Wisconsin.) Ferraro wanted to open two clubs in the downtown Milwaukee area. The one owned by Six Star would be called "Silk East," at 730 North Old World Third Street, and the other, owned by Ferol, would be called "Satin" and located at 117 West Pittsburgh Avenue.

Under the licensing regime in place before March 1, 2012, there were three lawful ways to offer so-called adult entertainment. To operate an establishment that offered both alcohol and nudity, the proprietor was required to obtain a liquor license, sometimes called a tavern license, and a tavern- amusement license. See Milwaukee Code of Ordinances (MCO) § 90. To operate a dry (that is, alcohol-free) club with nude entertainment, the proprietor could obtain either a theater license, MCO § 83–1, or a public–entertainment club license, MCO § 108-5.

Initially, Ferraro hoped that both of his planned clubs would be authorized to serve alcohol and to provide nude entertainment. Six Star and Ferol accordingly each applied for a liquor license and a tavern-amusement license in September 2010. They quickly learned that the City did not welcome Ferraro's plans. The Milwaukee Common Council denied both sets of applications after a public hearing before the Council's Licensing Committee. Members of the public complained that the clubs would produce unwanted secondary effects on the neighborhood, including a disorderly clientele and increased crime, and that they would drive away other businesses.

Following this setback, Ferraro reevaluated his options. He began preparations to open a dry adult club at one of his locations. For market research, he visited several other dry clubs—one near Appleton, Wisconsin, and others in Las Vegas. He began calculating whether a Milwaukee-area dry club could be profitable based on the financial data from another Milwaukee-area club he owned. He identified managers from his other establishments who could move to his new club, and he contacted a parking service to arrange for valet parking at the new club. But his lawyer interrupted his preparations with more bad news: although he would not need a liquor license and tavern-amusement license, he would need either a theater license or a public-entertainment club license to operate a dry club that featured nudity.

With this information in hand, Ferraro decided that Six Star should apply for a theater license to operate "Silk East" as a dry club. Six Star submitted a revised application to the Common Council in September 2011. It went nowhere: a Milwaukee alderman put a "hold" on it, and there it sat. No

action was taken on Six Star's application before both ordinances were repealed on March 1, 2012.

As Ferraro's business plans evolved, so did his legal strategy. Back in 2010, before applying for any license, both Six Star and Ferol filed suits in the federal district court for the Eastern District of Wisconsin attacking the liquor license and tavern amusement license ordinance, MCO § 90. Their cases were quickly consolidated. After the Common Council denied their applications for liquor licenses and tavern amusement licenses, they amended their complaint a few times. Eventually they reached their Fourth Amended Complaint. It challenged MCO § 90 (the liquor and tavern amusement license ordinance), MCO § 83–1 (the theater license ordinance), and MCO § 108-5 (the public entertainment club ordinance) under 42 U.S.C. § 1983; all of these ordinances, they charged, violated their First Amendment rights facially and as applied. The complaint asked for damages and injunctive relief.

In time, cross-motions for summary judgment were filed. On March 18, 2013, the district court granted summary judgment in the City's favor with respect to the facial and as-applied challenge to the tavern-amusement license part of MCO § 90 and the as—applied challenge to the liquor license part. The court relied on *Blue Canary Corp.*, 251 F.3d 1121, which it understood to allow a city to deny a license based on the secondary effects of the proposed establishment without running afoul of the First Amendment. It held that the Common Council's decision rested on the predicted secondary effects of the clubs and not on their expressive content.

The court granted summary judgment for Six Star on its challenge to the theater ordinance, MCO § 83–1. Because the ordinance had since been repealed, the court limited itself to the as-applied challenge. It held that the theater ordinance operated as a prior restraint on expressive activity without the necessary procedural safeguards, particularly because the city had unfettered discretion to indefinitely delay rendering a decision, contrary to *Plain Dealer Publ'g. Co.*, 486 U.S. 750 and *Freedman*, 380 U.S. 51. Six Star, it said, was entitled to damages for lost profits from the months during which it would have operated Silk East but for the ordinance. The court did not reach Six Star's facial challenge to the theater ordinance, which it thought no longer made any difference. It noted a question about Ferol's standing to bring an as-applied challenge to the theater ordinance or the public entertainment club ordinance, because it had not requested a license, but it invited additional briefing on the matter.

After the court received additional briefing on Ferol's standing, it issued a second opinion on August 28, 2013, granting summary judgment to Ferol on liability. It was persuaded that Ferol did have standing in light of an affidavit that Ferraro submitted. Ferraro attested that Ferol would have opened Satin as a dry club at 117 West Pittsburgh Avenue in September 2010 had it not been for the theater license and public—entertainment club ordinances. Ferraro detailed the concrete steps he had undertaken to prepare for the club's opening. The court concluded that the ordinances were unconstitutional as applied to Ferol.

Finally, the court put the questions of causation and damages before a jury, at a trial held on February 17–19, 2015. Ferraro acknowledged that he would have opened on-

ly one club—either Satin or Silk East—and therefore he asked for nominal damages for Six Star and lost-profit damages for Ferol. At the trial, the City cross-examined Ferraro and his business partners in detail about their plans to open a dry club. The jury found for Ferol, answering "Yes" to the question, "Would plaintiff Ferol, LLC have opened a dry gentlemen's club at 117 West Pittsburgh Avenue in the City of Milwaukee before March [1], 2012, but for the existence of the former theater and public entertainment club ordinances?" (The form actually said March 12, but this seems to be a typographical error.) The jury awarded Ferol $435,000 in compensatory damages for its lost profits.

## II

### A

The City's central argument on appeal is that Ferol lacked standing to challenge either the theater license or the public- entertainment club ordinances because it suffered no injury traceable to the City's conduct. This is a fundamental issue we must take up whenever it is raised. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Article III standing "requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). As the "party invoking federal jurisdiction," Ferol "bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561. Standing must "be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suf-

fice," but at summary judgment, the plaintiff "must 'set forth' by affidavit or other evidence 'specific facts.'" *Id.* (quoting FED. R. CIV. P. 56(e)).

We first consider whether Ferol has standing on the assumption that he is bringing a pre-enforcement challenge to the relevant ordinances. In that case, Ferol must demonstrate that the threat of enforcement of an unconstitutional ordinance caused injury that was "actual or imminent, not conjectural or hypothetical." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (internal quotation marks omitted). Ferol's "allegation[s] of future injury may suffice [when] … there is a 'substantial risk' that the harm will occur." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147, 1150 n.5 (2013) (some internal quotation marks omitted)). Ferol can establish future injury by alleging "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute,'" and "'a credible threat of prosecution.'" *Id.* at 2342 (quoting *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); see also *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010) (pre-enforcement challenge to criminal law justiciable because "[p]laintiffs face a credible threat of prosecution" (internal quotation marks omitted)).

Ferol fits comfortably within the boundaries laid out by *Susan B. Anthony List*. Ferraro averred in his affidavit that the company had "an intention to engage in a course of conduct" protected by the First Amendment, but that conduct was proscribed by the ordinances, and the company faced a credible threat of prosecution. He alleged that Ferol would have opened a dry adult entertainment club at 117 West

Pittsburgh Avenue had the City not had its open-ended and unpredictable licensing regime. Ferraro set out the numerous concrete steps that he had taken on Ferol's behalf to prepare for business. In that respect, Ferol went the extra mile: it did not have the burden of proving that it definitely would have opened the dry club in order to have standing (although the jury's lost-profits verdict shows that the jury thought Ferol did prove this). At the summary judgment stage, Ferol needed only to allege sufficient facts to support standing and to support those facts with evidence that met the criteria of Federal Rule of Civil Procedure 56(c). *Lujan*, 504 U.S. at 561.

But Ferol's claim may not be best understood as a pre-enforcement challenge. It rests on the ordinances' immediate chilling effect on its protected speech—in other words, on an injury that has already occurred. Where statutes operate as prior restraints and the decisionmaker's discretion is not properly cabined, "the mere existence of the licensor's unfettered discretion, coupled with the power of prior restraint, intimidates parties into censoring their own speech, even if the discretion and power are never actually abused." *Plain Dealer Publ'g. Co.*, U.S. 486 at 757. It has thus long been established "that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." See *id.* at 755–56 (collecting cases); *Freedman*, 380 U.S. at 56 ("In the area of freedom of expression it is well established that one has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office … whether or not he applied for a license.").

We recognize that Ferol is challenging the Milwaukee ordinances as applied, not facially. But the distinction has little force in the present circumstances. As the Supreme Court has explained, "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010). Rather, "it goes to the breadth of the remedy employed by the Court": a facial challenge usually invites prospective relief, such as an injunction, whereas an as-applied challenge invites narrower, retrospective relief, such as damages. *Id.* In this case, the need for an injunction has disappeared, and so we are left only with Ferol's request for damages. That aspect of the case does not depend on the legal theory he is using.

Ferol had already suffered an injury from the unconstitutional ordinances. It alleged—and a jury ultimately found—that it refrained from protected speech in response to the City's unconstitutional ordinances. This describes an injury-in-fact sufficient to support standing. See *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988). It is fairly traceable to the unconstitutional ordinances—Ferol alleged that, but for the ordinances, it would have engaged in protected speech, and a jury ultimately found this to be true. Damages redress the harm that Ferol suffered by replacing the lost profits Ferol would have earned if it had been able to open its club at the planned time.

This is enough to show why the City's complaint that the district court erred by construing Ferol's suit as an applied, rather than a facial, challenge is going nowhere. Because the

distinction between facial and as-applied challenges informs only the choice of remedy, "not what must be pleaded in the complaint," a court may construe a challenge as applied or facially, as appropriate. See *Citizens United*, 558 U.S. at 331.

B

The City offers two additional arguments against Ferol's standing, but neither is persuasive. First, the City asserts that Ferol's decision not to apply for a license was unreasonable because it was based on the advice of an "unlicensed lawyer." This argument was not raised below and is therefore waived. See *James v. Hyatt Regency Chicago*, 707 F.3d 775, 783 (7th Cir. 2013). Moreover, it is without merit: in a separate opinion regarding attorney's fees, the district court explained that Ferol relied on the advice of its (licensed) counsel, who employed and supervised a trial consultant and other staff. *Six Star Holdings, LLC v. City of Milwaukee*, No. 10-CV-0893, 2015 WL 5821441, at *4 (E.D. Wis. Oct. 5, 2015).

Second, the City says that Ferol's standing fails because the City never had the opportunity to exercise its prosecutorial discretion to *refrain* from enforcing the ordinances. But there is no requirement to give it such an opportunity. See *Am. Booksellers Ass'n, Inc.*, 484 U.S. at 392 (permitting challenge before statute took effect); *Commodity Trend Serv., Inc. v. Commodity Futures Trading Comm'n*, 149 F.3d 679, 687 (7th Cir. 1998) (government must "indicate affirmatively that it will *not* enforce that statute" in a criminal context); *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996) ("courts will assume a credible threat of prosecution in the absence of compelling contrary evidence"); *cf. Wis. Right to Life, Inc. v. Paradise*, 138 F.3d 1183, 1185 (7th Cir. 1998) (court will assume no "well-founded" fear of enforce-

ment when government presents official, written policy against enforcement (quoting *Am. Booksellers Ass'n*, *Inc.*, 484 U.S. at 393)).

The City's real concern appears to be a variant of the floodgates scenario. It fears that plaintiffs will emerge from the woodwork alleging that they too would have undertaken protected First Amendment activities but for now-repealed statutes. This is sheer speculation, however, and it fails to take into account the many safeguards built into the courts' authority to adjudicate claims. Under Article III of the Constitution, any allegation of harm must be concrete and particularized and proven at each stage of litigation, just like any other fact. *Lujan*, 504 U.S. at 561. Statutes of limitations also limit legal exposure. Courts routinely entertain suits for damages stemming from repealed laws. See, *e.g.*, *Markadonatos v. Vill. of Woodridge*, 760 F.3d 545, 546 (7th Cir. 2014) (*en banc*) (Posner, J., plurality opinion) (considering awarding damages based on repealed law, although ultimately not doing so on the merits); *id.* at 565 (Hamilton, J., dissenting) (agreeing that damages could be awarded based on repealed law); *Peterson v. Lindner*, 765 F.2d 698, 701 (7th Cir. 1985) (same).

Ferol had standing to challenge the City's theater license and public entertainment club ordinances. Therefore the district court had jurisdiction.

## III

### A

The City also argues that Ferol's claim for damages is not cognizable because the harm came from Ferraro's choice to

self-censor, not from the ordinance. At times, the City frames this as a challenge to the sufficiency of the evidence. To the extent that is the case, the argument is waived: the City failed to make a proper motion under Federal Rule of Civil Procedure 50(a) prior to jury deliberations, and thus it had no motion to renew under Rule 50(b) after the verdict. See *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006) (holding appellate court may not review sufficiency of the evidence without proper Rule 50(a) and (b) motion).

The City may, however, be making a simple legal point. We may consider "pure questions of law unrelated to the sufficiency of the trial evidence" regardless of whether there was a motion under Rule 50(a) or (b). *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015); see also *Ortiz v. Jordan*, 562 U.S. 180, 189 (2011) (declining to resolve circuit split over the need for motions under Rule 50(a) and (b) to preserve pure questions of law for appellate review). So understood, it still cannot prevail. Neither company was self-censoring in a vacuum; they were responding rationally to the City's position that they were not permitted to open their businesses until it gave them a license. To the extent that any voluntary action was involved, it is well established that the chilling effect of a statute that violates the First Amendment is enough to support a claim. See, *e.g.*, *FCC v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012) ("when speech is involved, rigorous adherence to those requirements [of avoiding vagueness and unlimited enforcement discretion] is necessary to ensure that ambiguity does not chill protected speech"); *Am. Booksellers Ass'n, Inc.*, 484 U.S. at 393; *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 798–99 (1984); *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973); *Freedman*, 380 U.S. at 61; see also *FW/PBS,*

*Inc. v. City of Dallas*, 493 U.S. 215, 253 (1990) (Scalia, J., concurring in part and dissenting in part); *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 473–74 (7th Cir. 2012); *Schultz v. City of Cumberland*, 228 F.3d 831, 848 (7th Cir. 2000).

B

Last, we turn to the question of the nominal damages the district court awarded to Six Star. The City fights this because, it argues, Six Star suffered only *de minimis* harm. But it overlooks the fact that this is exactly the situation for which nominal damages are designed. And in civil rights cases, nominal damages are appropriate when a plaintiff's rights are violated but there is no monetary injury. See *Carey v. Piphus*, 435 U.S. 247, 266–67 (1978).

The City protests that Six Star could not have opened Silk East at 130 North Old World Third Street because another tenant occupied that space. Whether that is true is disputed: Six Star offered evidence that it leased the space to a tenant with the caveat that Six Star could displace the tenant immediately upon obtaining a theater license. Moreover, this fact is irrelevant to the legal issue, which relates to the First Amendment implications of the lack of clear licensing standards binding the City, not how quickly Six Star could have moved if the City had issued a license. The City is not defending these repealed ordinances. At most, the presence of the tenant might have been relevant to Six Star's damages, but given the award of nominal damages, even that point drops out.

IV

The City is fighting a losing battle over a regime whose time has passed. Finding no merit in either of its challenges

to Ferol's and Six Star's standing or its arguments on the damages awarded to each company, we AFFIRM the judgment of the district court.