In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 16-2352

LEXINGTON INSURANCE COMPANY,

*Plaintiff/Counter-Defendant-Appellee,*

*v.*

HORACE MANN INSURANCE COMPANY,

*Defendant/Counter-Plaintiff/Third-Party Plaintiff-Appellant,*

*v.*

AON RISK INSURANCE SERVICES WEST, INC.,

*Third-Party Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CV 2352 — **Charles R. Norgle**, *Judge.*

_____

ARGUED DECEMBER 7, 2016 — DECIDED JUNE 29, 2017

_____

Before BAUER and FLAUM, *Circuit Judges*, and SHADID, *District Judge.**

_____

* Of the Central District of Illinois, sitting by designation.

FLAUM, *Circuit Judge.* Christopher Drake was involved in a car accident with another driver, who offered to settle the matter with Drake's automobile insurer, Horace Mann Insurance Company. The offer expired before Horace Mann accepted it, however, and the driver sued Drake and sent a letter to Drake's lawyer suggesting that Horace Mann had handled the matter in bad faith. Believing that this letter constituted a "claim" against Horace Mann for extra-contractual damages—and that this "claim" had accrued before the start date of Horace Mann's own insurance policy with Lexington Insurance Company—Lexington sought a judicial declaration that it had no duty to indemnify Horace Mann under that policy. Horace Mann counterclaimed for breach of contract and declaratory judgment, and requested (pursuant to an Illinois statute) additional damages for "vexatious and unreasonable" claims-handling. Horace Mann also filed a third-party complaint against its insurance broker, Aon Risk Insurance Services West, for negligence in reporting the extra-contractual "claim" to Lexington. The district court resolved Lexington's complaint, in Horace Mann's favor, at summary judgment, but awarded judgment to Lexington and Aon on Horace Mann's claims under Federal Rule of Civil Procedure 50(a). Horace Mann appeals the Rule 50(a) decisions, and for the following reasons, we affirm.

## I. Background

### A. The Litigation Against Drake

In May 2008, Christopher Drake's truck collided with Joseph Burley's motorcycle in Tampa, Florida. Burley was seriously injured in the crash, and the following month, Burley's lawyer sent a letter to Drake's insurer, Horace Mann, in which Burley offered to settle his claims against Drake for $25,000

(the limit of Drake's insurance policy). The letter stated that Burley's offer would remain open for twenty days. Horace Mann responded that it could not make any payments until it had received Burley's medical records, but as Burley's lawyer did not provide those records, the twenty-day window closed without a settlement.

In August 2008, Burley's attorney sent a follow-up letter to Horace Mann, notifying the insurance company that Burley was pursuing his claims against Drake in the Florida courts. The insurer then attempted to resolve the matter by sending to Burley's lawyer, on multiple occasions, a check for $25,000. Burley refused to settle, however, and he never cashed the checks. Employees at Horace Mann began to suspect that Burley's lawyer had been trying to set up the insurance company for a claim of bad-faith conduct—which, if successful, could expose the insurer to liability beyond the coverage limits of Drake's policy. *See* STEPHEN S. ASHLEY, BAD FAITH ACTIONS LIABILITY & DAMAGES §§ 3:6, 8:3 (2d ed. 2016).

The *Burley v. Drake* litigation continued, and two years later, on September 14, 2010, Burley's lawyer sent Drake's counsel a letter concerning an upcoming mediation session:

> We have scheduled the mediation of this case [for later this year].…Obviously, the only way [Drake] is going to obtain any relief from the judgment that certainly will be obtained in this case, is if the [insurance] carrier agrees to acknowledge their extra-contractual exposure and "open" their limits.
>
> …If [the carrier has] an extra-contractual lawyer looking into this matter, please let me know the

> name of that person and I will deal with them
> directly. If not, please relay my message that we
> intend to discuss the extra-contractual aspects
> of this case that, if acknowledged, would give
> your client assurance of financial relief.

Drake's attorney forwarded this letter to Horace Mann, and
Horace Mann sent to the mediation session a claims adjuster
for extra-contractual-liability claims. The claims adjuster was
authorized to offer no more than $200,000 in settlement, how-
ever, and Burley would accept no less than $8 million, so the
parties concluded the session without reaching an agreement.

### B.  Horace Mann's Policy with Lexington

In August 2010, Horace Mann had in place a professional-
liability insurance policy issued by Lexington. That policy,
which had a one-year effective period beginning on Septem-
ber 28, 2009, obligated Lexington to pay Horace Mann's losses
arising from errors committed by Horace Mann in serving its
clients. On August 20, 2010, Horace Mann e-mailed its insur-
ance broker, Aon, about notifying Lexington of the *Burley* lit-
igation. Aon responded:

> We don't have [a] record of this matter. Appar-
> ently, [the *Burley* suit was] filed in 2008 …. If
> that's the case, we would have a late noticing is-
> sue …. Let us know how you would like us to
> proceed.

Horace Mann replied that it would like Aon to "[p]lease pro-
ceed in reporting" the matter to Lexington; but Aon stated
that it would need a copy of the *Burley* complaint before doing
so, and asked Horace Mann to send one over. Three days later,
on August 23, Horace Mann explained in a follow-up e-mail

that it was working on getting copies of the complaint, and reiterated its request that Aon "proceed in reporting" the suit to the insurance carrier. Aon in turn asked if it would be acceptable to notice the suit once Aon had received the complaint, and Horace Mann agreed that that would be fine. Horace Mann eventually forwarded the complaint to Aon on September 21, once more asking that Aon submit the matter to Lexington for review. On September 24, however, a Horace Mann employee e-mailed Aon to indicate that she had "d[one] a little more digging," and that there were no "written" extra-contractual allegations; accordingly, wrote the employee, Horace Mann "wish[ed] to withdraw this claim." Aon did as the employee asked, and did not submit anything to Lexington at that time.

On December 17, 2010—two days after the unsuccessful mediation session with Burley—Horace Mann again instructed Aon to provide Lexington with notice of the *Burley* suit. (Lexington had in the meantime renewed Horace Mann's policy, which now had a one-year effective date beginning September 28, 2010.) Aon did so, by letter, on January 11, 2011. The January 11 letter stated that Horace Mann was giving notice of a "potential" professional-liability claim based on the *Burley* matter, which Horace Mann expected to give rise to an actual "claim" against that insurance company. Attached to the letter was a memorandum summarizing the underlying events and prior communications between Horace Mann and Burley's counsel.

On February 4, 2011, a Florida jury returned a $17 million verdict against Drake in the *Burley* action. Horace Mann informed Lexington of the verdict, and transferred to Lexington the *Burley* claim file and related documents, including the

September 2010 letter from Burley's lawyer. Burley's counsel then sent to Horace Mann a message on March 3, 2011, in which the attorney stated:

> Following our conversation last night, I had a chance to talk to my client about settling this case….I told you last night that our initial offer to settle this case would be the face value of the judgment, or $17 million. I have confirmed that my client is willing to negotiate from that number. [W]e should work towards doing this within the upcoming few days.

Several days later, on March 7, the head of Horace Mann's claims committee telephoned Lexington's claims adjuster and explained that Burley's lawyer had made an opening demand of $17 million; according to Horace Mann, the claims adjuster responded that $10 million or less would be "a good settlement." Lexington ultimately sent Horace Mann a reservation-of-rights letter denying coverage, however, as in Lexington's view, Burley had demanded extra-contractual damages from Horace Mann by letter dated September 14, 2010—and so Horace Mann's "claim" had accrued before the operative (2010–2011) policy with Lexington had taken effect on September 28.[1] The reservation-of-rights letter concluded with a

---

[1] The previous year's policy (*i.e.,* the 2009–2010 policy) had provided that Lexington would indemnify its insured for any "claim" that: (1) accrued during the policy period; and (2) was reported to Lexington during that same period (or within thirty days of its expiration). Should a "claim" accrue during the last sixty days of the policy period, however, the insured had an additional sixty days beyond the policy's end date in which to report that "claim." If the September 14, 2010 letter from Burley's lawyer represented a "claim" against Horace Mann, as Lexington asserted, this "claim" would have accrued during the last sixty days of Horace Mann's

warning that Lexington planned to seek declaratory relief in
court. In the meantime, Horace Mann settled with Burley for
$7 million.

### C.  Procedural History

Lexington filed a declaratory-judgment action against
Horace Mann in April 2011, seeking a judicial declaration that
Lexington did not have a duty to indemnify Horace Mann for
the *Burley* settlement. Lexington alleged, among other things,
that there was no duty to indemnify because Horace Mann's
"claim" for insurance coverage predated the relevant policy.
Horace Mann counterclaimed for declaratory judgment and
breach of contract, asserting that that company's "claim" for
coverage had arisen not in 2010, but in early 2011. Horace
Mann also sought additional damages from Lexington under
215 Ill. Comp. Stat. 5/155 for "vexatious and unreasonable"
claims-handling. Horace Mann then filed a third-party com-
plaint against Aon, alleging that the insurance broker had
been negligent in providing advice about claims-reporting
generally and in failing to follow Horace Mann's instructions
for reporting the *Burley* claim in particular.

In December 2012 and January 2013, respectively, Horace
Mann and Lexington filed cross-motions for (partial) sum-
mary judgment on the issues of whether the September 2010
letter from Burley's lawyer was a "claim" under Horace
Mann's policy, and, relatedly, whether the operative "claim"

---

2009–2010 policy—giving Horace Mann until November 28, 2010 (or sixty
days after the policy's end date) to bring that "claim" to Lexington's at-
tention. Lexington in fact heard nothing about the *Burley* matter until Jan-
uary 2011, however, so under Lexington's theory, only the 2010–2011 pol-
icy could have provided any coverage.

had otherwise accrued before the start date of the (2010–2011) policy. The district court agreed with Horace Mann and answered "no" to both questions. Aon then moved for summary judgment, asserting that the district court's ruling had mooted Horace Mann's negligence suit against its insurance broker. The court denied Aon's motion as premature.

Lexington moved for summary judgment again in December 2015—this time on Horace Mann's counterclaim—arguing that Horace Mann could not prove that it had adequately notified Lexington of any "claims" made against Horace Mann in 2011. Horace Mann filed a response and cross-motion, and Aon, too, filed a second motion for summary judgment. While these motions were pending, the district court set a trial date for Horace Mann's claims, and trial began on April 12, 2016. The claims for breach of contract, declaratory judgment, and negligence were tried before a jury, while a bench trial was conducted on Horace Mann's request for additional damages under 215 Ill. Comp. Stat. 5/155.

Before the substantive claims were submitted to the jury, the parties filed a series of motions for judgment as a matter of law under Federal Rule of Civil Procedure 50(a): Horace Mann filed a motion, and Lexington a cross-motion, as to Horace Mann's claims for breach of contract and declaratory judgment; and Horace Mann filed a motion, and Aon a cross-motion, as to Horace Mann's negligence claims against its insurance broker. Curiously, Horace Mann also filed a motion as to Lexington's declaratory-judgment suit, despite a statement in the parties' proposed pretrial order agreeing that the court's earlier summary-judgment decision had resolved that action. The district court excused the jury and took the motions under advisement. On May 13, 2016, the court denied each of

Horace Mann's Rule 50(a) motions and granted Lexington's and Aon's motions as to Horace Mann's claims. The court then entered a separate, formal judgment, but only on Horace Mann's claims for breach of contract, declaratory judgment, and negligence. (The formal judgment did not address Horace Mann's request for additional damages under Illinois statute, or Lexington's declaratory-judgment complaint.) Horace Mann appeals the court's Rule 50(a) decisions.[2]

## II. Discussion

### A. The Insurance-Coverage Dispute

#### 1. *Horace Mann's Claims Against Lexington*

Horace Mann first appeals the denial of its Rule 50(a) motion on Horace Mann's counterclaims for breach of contract and declaratory judgment. A court may enter judgment as a matter of law where an opposing party has been fully heard on an issue at trial, and where a reasonable jury "would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In general, we review de novo a district court's decision under Rule 50. *See Campbell v. Miller*, 499 F.3d 711, 716 (7th Cir. 2007) (citation omitted).

---

[2] We have jurisdiction of appeals from all final decisions by the district court. 28 U.S.C. § 1291. "The … test for determining finality under … § 1291 is not the adequacy of the judgment, but whether the district court has finished with the case." *Hernandez v. Dart*, 814 F.3d 836, 841 (7th Cir. 2016) (citations, internal brackets, and internal quotation marks omitted). We are satisfied that, despite the absence of a formal judgment on the additional-damages issue and on Lexington's complaint, the district court was done with each of the parties' respective suits. The court wrote "Civil case terminated" in the docket entry immediately preceding the separate judgment that did issue, thus conveying that a final decision had been reached as to all claims in the litigation.

Lexington argues that appellate review is in this case fore-closed, however, because Horace Mann seeks on remand only the entry of judgment in its favor, and Horace Mann did not renew its motion for judgment as a matter of law under Rule 50(b).

Nothing in the text of Rule 50 expressly compels a party to renew its motion for judgment as a matter of law after that party's Rule 50(a) motion has been denied. In a series of cases beginning with *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212 (1947), however, the Supreme Court has made clear that a failure to renew may preclude the losing party from making certain challenges on appeal. The defendant in *Cone* had moved for judgment as a matter of law (at that time called a directed verdict) under Rule 50(a), the denial of which the defendant appealed after the case was submitted to the jury and the jury returned a verdict for the other side. The appellate court reversed and remanded with instructions to enter judgment in the defendant's favor, but the Supreme Court again reversed, holding that the appellate court had no power to direct the entry of judgment for the losing party below, because that party had never requested the relief at issue—that is, a judgment notwithstanding the verdict—under Rule 50(b). *See id.* at 213–14, 218.[3]

---

[3] Rule 50(b) at that time provided:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. *Within 10 days after the reception of a verdict, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon*

The problem with the appellate court's instructions in *Cone*, said the Court, was that Rule 50(b) did not *require* the district court to enter a judgment notwithstanding the verdict—even if that court was otherwise "persuaded that it [had] erred in failing to direct a verdict for the losing party." 330 U.S. at 215. The Rule instead provided that, in the event of such a mistake, the district court could "*either* order a new trial *or* direct the entry of judgment as if the requested verdict had been directed." *Id.* (emphases added) (quoting Fed. R. Civ. P. 50(b)). This either-or language gave the trial judge "an opportunity, after all his rulings ha[d] been made …, to view the proceedings in a perspective peculiarly available to him alone"—and thus "a last chance to correct his own errors without [the] hardships of an appeal." *Id.* at 216 (citations omitted); *see also id.* ("Determination of whether a new trial should be granted or a judgment entered under Rule 50(b) calls for the judgment in the first instance of the judge who saw and heard the witnesses and has the feel of the case ….") (citations omitted). Consequently, in the absence of a Rule

---

> *set aside and to have judgment entered in accordance with his motion for a directed verdict*; or if a verdict was not returned such party, within 10 days after the jury has been discharged, may move for judgment in accordance with his motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. *If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.* If no verdict was returned the court may direct the entry of judgment as the requested verdict had been directed or may order a new trial.

Fed. R. Civ. P. 50(b) (1938) (emphases added).

50(b) motion, the appellate court had no authority to direct the district court to enter a judgment "contrary to the one [already] permitted to stand." *Id.* at 218.

Horace Mann argues that *Cone* is inapposite here, as that case—like Rule 50(b) itself—governs only when all Rule 50(a) motions have been *denied*, and in this case, Lexington's motion was granted. We conclude the application of Rule 50(b) is not so limited. That Rule currently states:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment—or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged—the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b) (2009). Horace Mann points to the Rule's opening proviso—which states that the court is considered to have submitted an action to the jury if "the court *does not* grant a motion for judgment as a matter of law made under Rule

50(a)," *id.* (emphasis added)—as limiting the application of Rule 50(b) to only those instances in which the action has reached the jury. This is not quite right. Rule 50(b)'s opening clause simply clarifies that district-court judges may, in their discretion, wait to decide Rule 50(a) motions until after the jury has deliberated. Waiting is not required, however, and if the district court enters judgment before the jury has received the case, the losing party—if they, too, moved for judgment under Rule 50(a)—has twenty-eight days in which to renew their Rule 50(a) motion under Rule 50(b). *See id.* (counting from the entry of a "judgment," not from a post-verdict judgment in particular).

In this respect, the present version of Rule 50(b) operates in the same way as did its predecessor, which dealt with motions for directed verdicts.[4] This earlier version of the Rule— the same version at issue in both *Cone* and *Globe Liquor Co. v. San Roman*, 332 U.S. 571 (1948)—provided that, within ten days of the reception of "a verdict," a party who had moved for a directed verdict could renew that motion and ask that the actual verdict be replaced with a judgment in the moving party's favor. Fed. R. Civ. P. 50(b) (1938). The word "verdict," as used in this part of the Rule, was unqualified, and thus encompassed not only a verdict returned by the jury of its own accord, but also a verdict directed in favor of a party's opponent. The defendants in *Globe Liquor* therefore found their options limited on appeal when, after the plaintiff's motion for a directed verdict had been granted, the defendants neglected

---

[4] Horace Mann even entitled its Rule 50(a) motion a "motion for directed verdict," and continued to use that label in the party's opening brief on appeal.

to renew their Rule 50(a) motion under Rule 50(b). The Supreme Court rejected the defendants' argument that, because the verdict reflected only the "specific directions of the trial judge," *Cone* was distinguishable. 332 U.S. at 573. The reasoning in *Cone* still governed, explained the Court, because, "[b]y its terms," Rule 50(b) applied equally to both situations. *Id.* (emphasizing that, in the event of error by the district court, it is *that* court that must "first pass upon whether its error should result in a new trial or in a judgment finally ending the controversy").

*Cone* and *Globe Liquor* together instruct that, in order for a party to request on appeal a judgment in their favor due to insufficient evidence supporting the other side, the requesting party must not only have filed a motion under Rule 50(a), but must also have renewed that motion under Rule 50(b)—even where, as here, the jury did not have an opportunity to deliberate. *See also Unitherm Food Systems, Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006) ("[T]he precise subject matter of a party's Rule 50(a) motion—namely, its entitlement to judgment as a matter of law—cannot be appealed unless that motion is renewed pursuant to Rule 50(b)."). As Horace Mann did not do this, all of its sufficiency-of-the-evidence arguments against Lexington have been forfeited.[5]

Unfortunately for Horace Mann, the forfeiture extends to all of that party's arguments against Lexington, because Horace Mann has made no attempt to disentangle from the factual

---

[5] Citing *Parke-Chapley Construction Co. v. Cherrington*, 865 F.2d 907 (7th Cir. 1989), Horace Mann argues that the appropriate mechanism for challenging a Rule 50(a) decision is not an additional motion, but an appeal. The reliance on *Parke-Chapley* is misplaced. In that case we addressed the filing of a motion under Rule 60(b), not 50(b). *See* 865 F.2d at 914–15.

issues any questions that we could otherwise review. We may, for example, consider pure questions of law despite the absence of even a Rule 50(a) motion. *See Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 804 (7th Cir. 2016) (quoting *Lawson v. Sun Microsys., Inc.*, 791 F.3d 754, 761 (7th Cir. 2015)); *Lawson*, 791 F.3d at 761–62 (reviewing, post-trial, a purely legal question raised and preserved at summary judgment); *Houskins v. Sheahan*, 549 F.3d 480, 488–89 (7th Cir. 2008) (same). Indeed, as a general matter, pure questions of law ought not to be included in a Rule 50(a) motion in the first place, as doing so "defeat[s the] purpose [of that motion], which is to challenge *the sufficiency of the evidence*." *Houskins*, 549 F.3d at 489 (emphasis added) (citation omitted); *see also Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 161 (4th Cir. 2012) (explaining that Rule 50 "is not concerned with … questions of law that are detached from the evidence, not within the domain of the jury, and only ever properly ruled upon by the judge"). Horace Mann has identified no such questions here, however, and we decline to do so on Horace Mann's behalf. The award of judgment to Lexington on Horace Mann's breach-of-contract and declaratory-judgment claims thus remains intact.[6]

---

[6] Horace Mann had also requested damages against Lexington under 215 Ill. Comp. Stat. 5/155, which allows judges presiding over insurance disputes to impose additional monetary penalties on insurance companies where it appears that the latter have engaged in "vexatious and unreasonable" claims-handling. The district court here awarded judgment to Lexington on the Section 155 issue after concluding that Lexington did not have a duty to indemnify its insured in the first instance. Because we do not disturb the district court's decisions on Horace Mann's substantive causes of action, we likewise affirm the court's ruling under Section 155.

2. *Lexington's Declaratory-Judgment Suit*

The parties agreed before the trial in 2016 that the district court's 2013 summary-judgment order had disposed of Lexington's declaratory-judgment action. The court also barred the parties from raising at trial any issues decided in that order. Nevertheless, Horace Mann moved for judgment on Lexington's complaint under Rule 50(a), arguing that Lexington had presented to the jury no evidence supporting its pleading. Lexington (quite reasonably) objected to this motion as inappropriate, but argued in the alternative—should the court choose to consider the motion (and thus to allow the parties to revisit the court's earlier summary-judgment decision)—that the summary-judgment ruling was incorrect, and that Lexington should be awarded judgment as a matter of law on its declaratory-judgment claim. The district court denied Horace Mann's Rule 50(a) motion as "sparse and underdeveloped," and did not comment on Lexington's alternative request for a judgment in its favor.

Oddly, however, both parties insist on appeal that Lexington's motion in the alternative was somehow granted. It was not. The district court had no occasion to reconsider—and, as far as we can see, did not reconsider—its earlier ruling on Lexington's cause of action. Insofar as that suit is concerned, then, we have before us only the district court's denial of Horace Mann's motion under Rule 50(a). This denial was based not on the sufficiency of the evidence, but on what the court believed was a forfeiture of Horace Mann's sufficiency arguments as inadequately developed. We affirm the district court's decision, but on a slightly different ground: Rule 50 was not an appropriate vehicle for Horace Mann to confirm that Lexington's complaint had already been dismissed. If, as

Lexington conceded to the district court, the earlier summary-judgment order had disposed of all of Lexington's claims, there was no reason for Lexington to present evidence on those claims at trial—and therefore no reason for Horace Mann to challenge the sufficiency of that evidence under Rule 50.

### B. Claims Against Aon

Horace Mann's negligence claims against its insurance broker were the subject of cross-motions by the parties under Rule 50(a), but as with its claims against Lexington, Horace Mann did not renew its motion under Rule 50(b) after the district court awarded judgment to the other side. Thus, for the reasons discussed above, we cannot direct an entry of judgment for Horace Mann on its claims against Aon. As to these claims, however (and unlike with its claims against Lexington), Horace Mann asks in the alternative for a new trial. This request takes us outside the bounds of *Cone* and *Globe Liquor*, as those cases forbid the grant of a new trial only where the appellant "seek[s] to establish their entitlement to [that] trial *solely* on the basis of a denied Rule 50(a) motion." *Unitherm*, 546 U.S. at 403 (emphasis added). Here, more than one motion was filed under Rule 50(a): Horace Mann and Aon both sought judgment as a matter of law, and Aon's motion was granted. Horace Mann may therefore contend that Aon's motion should *not* have been granted—and that the negligence claims should have gone to the jury instead—without having filed a post-judgment motion under Rule 50(b) (or Rule 59).

A new trial is appropriate if, viewing all evidence and drawing all inferences from that evidence in Horace Mann's favor, we determine that a reasonable jury could have returned a verdict for Horace Mann on its negligence claims. *See*

*Campbell*, 499 F.3d at 716. For a reasonable jury to have found for Horace Mann on these claims, Horace Mann must have shown: (1) that Aon owed it a duty; (2) that Aon breached that duty; and (3) that Horace Mann was proximately injured by the breach. *See Jones v. Chi. HMO Ltd. of Ill.*, 730 N.E.2d 1119, 1129 (Ill. 2000) (citation omitted).[7] There is no dispute that, as Horace Mann's insurance broker, Aon owed Horace Mann a duty of reasonable care. *Cf. Garrick v. Mesirow Fin. Holdings, Inc.*, 994 N.E.2d 986, 990–91 (Ill. App. Ct. 2013) (noting that, because the relationship between an insured and its broker is a fiduciary one, the latter must "exercise reasonable skill and diligence" toward its client) (citations omitted). Horace Mann therefore focuses its arguments on the remaining two elements of the tort.

### 1.  Aon's Claims-Reporting Advice

Horace Mann first asserts that Aon breached its duty of care by providing Horace Mann with flawed claims-reporting advice. On May 5, 2010, Aon gave to Horace Mann a set of reporting guidelines, which included a warning that if Horace Mann notified Lexington of a "potential" claim for coverage—and Lexington rejected that notice as providing insufficient information—"there would likely be no coverage for the matter under the noticed policy" or "any future policy" (should any efforts to cure the deficiency be unsuccessful). Horace Mann contends that this warning did not track the policy language, and that, but for this unsound advice, Horace Mann would not have asked Aon to hold off on reporting the *Burley* matter to Lexington in September 2010. Once aware of a "potential" coverage issue, the theory goes, Lexington

---

[7] The parties agree that Illinois law applies in this case.

would have set up a claim file, and would have asked Horace Mann to keep Lexington abreast of any relevant goings on. Lexington therefore would have learned, much sooner than it actually did, of the September 2010 letter seeking extra-contractual damages (and of other significant documents and events); and the defenses to coverage upon which Lexington relied in its first summary-judgment motion would not have been viable, as each stemmed from an alleged delay in reporting certain information about the underlying dispute. Thus, says Horace Mann, Lexington would have indemnified Horace Mann for any *Burley* "claim," and Horace Mann could have avoided the present litigation altogether.

Aon offers several reasons why Horace Mann's theory cannot win the day, but we need only one: Horace Mann has not shown but-for causation. Even assuming that Aon's advice was faulty, and that, absent that advice, Lexington's original defenses to coverage would have been unavailable, Horace Mann points to no evidence—and otherwise makes no argument—that Lexington would not have lodged any *other* objections to indemnifying its insured. That Horace Mann had to fight for indemnification because of Aon's advice (or that, because of this advice, Horace Mann had to incur greater costs in fighting for coverage than it otherwise would have) is mere speculation—which cannot defeat a judgment under Rule 50(a). We thus affirm the judgment for Aon on Horace Mann's faulty-advice claim.

### 2. *Aon's Alleged Failure to Follow Instructions*

Horace Mann also contends that it was forced to litigate coverage for the *Burley* "claim" because Aon did not adequately follow Horace Mann's instructions to notify Lexing-

ton of that matter in 2010. Because this theory of recovery suffers from the same defect as the previous one, we again affirm the judgment for Aon under Rule 50.

We end with a parting observation: The district court in this instance took the fairly unusual step of removing the case from the jury before the jury had rendered a verdict. While this step was certainly a permissible one, in general, we think the better practice is for the court to take any Rule 50(a) motions under advisement until the jury has concluded its deliberations. The latter approach may obviate the need for a new trial—and thus conserve both time and resources for all—should it later be determined that the district court erred in granting a party's motion for judgment as a matter of law.

### III. Conclusion

The decisions of the district court are AFFIRMED.